EDWARD W. DAVIS AND OTHERS *against* THE AMERICAN SOCIETY FOR THE PREVENTION OF CRUELTY TO ANIMALS, AND HENRY BERGH.

(Decided June 28th, 1875.)

A court of equity will not interfere by injunction to prevent a society and its president, organized for the purpose of carrying out a law of the State, and invested by law with power to make arrests for that purpose, from exercising those powers on the ground that the statute is unconstitutional, or on the ground that the society or its president are using their powers oppressively, or

exceeding the power conferred on them by the statute, by making arrests in cases not authorized by the statute, especially in a case where the pecuniary ability of the society and its officers is unquestioned:

*So held* where application was made for an injunction to restrain the American Society for the Prevention of Cruelty to Animals (incorporated by an act of the Legislature of this State, passed April 10th, 1866, and the acts amendatory thereof), and its president, from making certain arrests threatened to be made by them for alleged violations by the plaintiffs of the statutes of the State relating to the prevention of cruelty to animals.

APPEAL by plaintiffs from an order of this court made at special term by Judge LARREMORE, dissolving a preliminary injunction that had been granted in the action by Judge LOEW.

The complaint (verified January 9, 1873) alleged that the plaintiffs were engaged in the business of slaughtering hogs at an abattoir in West 39th street, N. Y., and were jointly interested therein, and had permission from the board of health of said city to carry on said business, and had complied with all the regulations and ordinances of said board and of said city, and of the laws of this State, in regard to said business.

That they had at considerable expense constructed said abattoir in the most improved manner; for conducting said business with dispatch.

That the method was to pass a chain around one of the hind legs of the animal, suddenly raise it from the ground by means of a drum or pulley, and then immediately stick or stab it in the throat with a sharp knife, producing almost instantaneous death. That said method was the most humane and expeditious that had yet been adopted, caused speedy and almost painless death, drained the carcass almost entirely of blood, thus improving the wholesomeness and quality of the food and the market value thereof, without bruising, injuring or discoloring the flesh of the animal.

That the defendants, the American Society for the Prevention of Cruelty to Animals, was incorporated by the Legislature, April 10, 1866, and Henry Bergh was the president thereof.

That Bergh, on January 6, 1873, came to said abattoir and announced that plaintiffs and all others there engaged must dis-

continue the slaughtering of hogs in such manner, and that he would not allow said business to be thus carried on, and thereupon arrested one of the plaintiffs and one of their employees for alleged cruelty to animals, and announced that thereafter he would arrest all persons engaged in said business, and stop the same as often as he found plaintiffs conducting it in manner aforesaid.

That plaintiffs made contracts for the sale of said animals before they were slaughtered, and that any interference with their business, as threatened, would work irreparable injury and loss to them, preventing them from fulfilling their contracts, depriving them of the services of their skilled workmen, &c. That for an action to be brought by each plaintiff and their workmen for each arrest, would cause a multiplicity of actions and entail great expense, without affording adequate compensation for the damage sustained.

Plaintiffs then demanded that defendants, their officers, agents, &c., be perpetually restrained and enjoined from interfering with the plaintiffs' business in any way, or with their employees, until the final judgment in the matter. Several affidavits were annexed to the complaint corroborating the material facts therein stated.

The answer (verified March 3, 1874) denied all the material allegations in the complaint, and also that plaintiffs have complied with the law, but, on the contrary, averred that plaintiffs, in the prosecution of their business, had violated, and did constantly violate, the provisions of an act entitled "An act better to prevent cruelty to animals," passed April 19, 1866, and also of the act entitled "An act for the more effectual prevention of cruelty to animals," passed April 12, 1867.

That the said business conducted by the plaintiffs had regard more to the speed with which it could be accomplished, than the comfort of, or the cruelty to the animals, for the benefit of whom said statutes were enacted.

Defendants averred that said animals were needlessly tortured and tormented by the mode of slaughtering adopted by plaintiffs. That each animal, by means of an iron chain fastened around its ankle, was raised by a pulley to a floor above, and, in

some instances, four stories above the pen in which it was confined, thereby dislocating its leg; was then stabbed in the throat, and immediately thereafter, while yet living, plunged into a cauldron of boiling water. That defendants requested plaintiffs to use a wide leather strap in raising said animals, secured around both legs instead of one, and to allow life to become extinct before plunging them into boiling water, to which plaintiffs consented and agreed.

The defendants further averred that said society was charged with enforcement of all laws of the State for the protection and prevention of cruelty to animals, by the arrest, conviction and punishment of all violators thereof, and that the execution of said laws had been intrusted by said society to its president, Henry Bergh (the defendant), in which relation and capacity he acted in the alleged interference with plaintiffs' business.

The affidavits of the defendant Bergh and two police officers were also read, corroborating said answer, and counter affidavits read and submitted on the part of plaintiffs in denial of their violation of the law.

The opinion below was delivered at special term.

*A. Oakey Hall*, for plaintiffs.

*Elbridge T. Gerry*, for defendants.

LARREMORE, J.—In this case an injunction is sought to be maintained against a corporation and its ministerial officers, whose rights and powers are conferred by statute. Section 26 of the Laws of 1866, chap. 682, provides "that every person who shall, by his act or neglect, maliciously kill, maim, wound, injure, torture or cruelly beat any horse, &c., or other animal, shall, upon conviction, be adjudged guilty of a misdemeanor."

The defendant, the American Society for the Prevention of Cruelty to Animals, was incorporated by an act of the Legislature of this State, passed April 19, 1866, chap. 469, and by the 7th section of said act the police force of the city of New York were directed, as occasion should require, to aid said society, its members or agents, in the enforcement of all laws which had

been or might thereafter be enacted for the protection of dumb animals; another act was passed by the Legislature, April 12, 1867, chap. 375, which provides (§ 1) "that if any person shall overdrive, overload, torture, torment or needlessly mutilate any animal, or cause the same to be done, &c., every such offender shall, for every such offense, be guilty of a misdemeanor."

Section 1 of said act authorizes any agent of said society, upon being designated thereto by the sheriff of any county in this State, to make arrests within said county, and bring offenders violating the provisions of said act before any court or magistrate having jurisdiction thereof.

There is no pretense that said society and Henry Bergh, its president, are not authorized to enforce the observance of the statutes above-mentioned within the city and county of New York.

The defendants, being thus clothed with proper legal authority, their official action should not be interfered with or restrained, unless it be injurious and wrongful in its nature, especially in a case where the parties aggrieved have an adequate remedy at law, and the pecuniary responsibility of the defendants is unquestioned (*Stern* v. *Kennedy*, 15 Abb. 201; *Moore* v. *Board of Com'rs of Pilots*, 33 How. 184; *Gilbert* v. *Mickle*, 4 Sand. Ch. Rep. 357; *Prendovill* v. *Kennedy*, 34 How. 416).

The real issue in this case is not whether the mode of slaughtering animals, as set forth in the complaint, is the best and most expedient, but whether or not, independent of such mode, wanton acts of cruelty are allowed and practiced, such as dislocating the limbs of the animals slaughtered, and plunging them while yet alive in boiling water. Such acts are made criminal offenses by statute, and if committed in the presence of a duly designated officer of said society, subjects the offender to arrest without a warrant (*Broadway Stage Company* v. *The American Society for the Prevention of Cruelty to Animals*, 15 Abb. Pr. N. S. 50).

For such violation of the statute the defendants claim the right of arrest, and the plaintiffs ask the preventive process of the court.

I have not been able to find, nor have I been referred to

any case which authorizes such a remedy. To grant it would be assuming the position that the plaintiffs would not, during the pendency of this action, violate the statutes in question, and therefore the defendants, whose official duty it is to prevent and punish such violation, must be restrained in the exercise of rights expressly enjoined upon them by the statute. The right to an injunction in any case is not *ex debito justitiæ*, but is always addressed to the sound discretion of the court. It would be a wide stretch of judicial discretion to inhibit a public officer, for any time, from arresting and prosecuting all offenders against a criminal statute.

Even in actions purely civil, an injunction would not be granted against a merely apprehended trespass (*Mayor of N. Y.* v. *Conover*, 5 Abb. 171; *N. Y. Life Ins. & Trust Co.* v. *Supervisors of N. Y.* 4 Duer, 192; *Chemical Bank* v. *The Mayor*, &c. 12 How. 476.; *Lewis* v. *Oliver*, 4 Abb. 121; *Wilson* v. *The Mayor*, &c. 4 E. D. Smith, 675).

Plaintiffs do not seek to restrain a trespass affecting a corporate franchise, but ask relief against acts which must necessarily involve individual misconduct; for this their remedy at law is adequate and complete, and the defendants, upon whom the law has devolved most important trusts, should be left to an unrestrained exercise of their lawful powers, subject only to a right of action for their abuse.

Injunction dissolved, with costs to abide event of suit.

From the order dissolving the preliminary injunction the plaintiffs appealed to this court at general term.

*A. Oakey Hall*, for appellants.

Injunction is the proper remedy (*Wallack* v. *The Mayor*, &c. 5 Supreme Court Rep. 310). The facts in the appellants' affidavits show that no adequate remedy exists at common law, and that the remedy sought is the only adequate one.

The defendant, Henry Bergh, should be restrained from committing the trespasses complained of. 1. The trespass which he threatened was an utterly illegal one. He threatened to continue to arrest the plaintiffs' agents, officers and servants

without a warrant, and on his mere selection of time, place and cause, and thereby utterly ruin their large business, and drive them to a multiplicity of suits. 2. He is not in any sense a public officer, and there is no pretense that at the time of the trespass he was one. (*a*) The answer of Mr. Bergh avers merely that he is president of the Society for the Prevention of Cruelty to Animals. (*b*) The law shows that the acts Mr. Bergh claimed constituted an offense, were of the grade of statutory misdemeanor, and perhaps a common law one as well. (*c*) This being so, one of the gravest questions that ever was presented to a court of justice in a Saxon country, now arises: *whether the Legislature, by simply incorporating a private society, can authorize any of its officers, expressly or impliedly, to perform the functions of a peace officer, and arrest persons for misdemeanor without warrant?* Because, if the Legislature can so authorize, then it can establish societies for the suppression of gambling and of *bagnios*, and for the prevention of intemperance, etc., etc., and authorize the officers of each private society to substantially open courts on sidewalks, and in private premises, and in places of business, and, without warrant or process of law, adjudicate that parties have offended, then arrest them, and so, perhaps, utterly break up businesses. Under sanction of such kind of laws, the utmost oppression of personal liberty, and of the possession of personal property, could be practiced (3 Wharton, 7th ed. §§ 2934, 2935).

But even if Mr. Bergh had been a public officer, he would not have been justified in making the arrest which is referred to in the affidavits, or in threatening the acts complained of, and which he admits were about to be executed. The whole law on this subject is most learnedly put in a case referred to almost every day in the police courts, and decided by this tribunal (Opinion by Chief Justice Daly, *Boyleston* v. *Kerr*, 2 Daly, 221). Wharton, 3d vol. 7th edition, section 2928, says: " And there is strong reason for the position that the right, even as to offenses committed in the officer's presence, is limited to felonies, breaches of the peace, and such misdemeanors as cannot be stopped or redressed except by immediate arrest. Why, if the misdemeanor is completed, and the offender is not

likely to escape, should the check and safeguard of a warrant be waived? Constables and other minor officials are apt enough to abuse, especially with the poor, their powers; and the policy of the law not only requires that they should be kept under strict control, but that to prosecutions for private misdemeanors there should be responsible private prosecutors. In conformity with this view, it was rightly held in New York, in 1871, that neither a justice of the peace nor a constable can, at common law, arrest without warrant a person committing an illegal act in his presence, unless such act be a felony or involve a breach of the peace; and that cruelty to an animal, although a statutory misdemeanor, is not such an offense as authorizes arrest without warrant" (citing *Butolph* v. *Blast*, 5 Lans. 84). There is abundant reason for such position in refusing an arrest without warrant. A private person or an officer can tell instantly whether a man has committed a physical act (for instance) of petit larceny, or assault and battery, or throwing ashes in the street, or indecently behaving himself, etc., etc.; but for other kinds of misdemeanor, as, for instance, seduction under promise of marriage, and for selling liquor without a license, and for cruelty, *which are acts compounded of the physical and of the mental, and which are acts more or less characterized by adjectives and by indices to intent*, there never should be arrest without a warrant and a preliminary adjudication. In the case at bar, Mr. Bergh substantially opens a court in our premises, and says: "This is cruelty to animals." He may see a horse on the highway being shot by a man, or a dog being killed, and he then arrests the man. But the horse may turn out to be glandered, and the man have been justified in killing it, as he would have been; because, at common law, a glandered horse is a nuisance. The dog may be mad. A man who kills a cat may do it in self-protection. All of these matters of qualification, modification and reduction of consequences, could have been ascertained and adjudicated upon by the proper examination before a magistrate, and so a security obtained to personal liberty and personal rights. Which is the reason why common law calls for a warrant in all such cases. But for Mr. Bergh to undertake to erect by his officers and agents, and by himself,

courts of *pied poudre*, for instantaneous and summary justice, would be against the genius of our institutions and our constitutions.

*Elbridge T. Gerry*, for respondents.

The appellants are proprietors of a slaughter-house in this city, and obtained the injunction, *ex parte*, upon affidavits that the respondents had threatened unlawfully to interfere with their killing hogs—by first hanging the animals up by the heels, and then cutting their throats and bleeding them to death; all which they averred was a necessary and proper mode of conducting their business. Upon the motion to dissolve the injunction, the respondents showed that such was *not* the ground of intended interference by them with the appellants; that the latter, in killing the hogs, first needlessly attached a chain to the hind legs of the animals, and then, having dislocated their legs by hauling them some forty feet up a hoistway, cut their throats and plunged them, WHILE ALIVE, into boiling water. This, it was claimed, was in violation of the laws against cruelty to animals (2 L. 1866, ch. 682, § 1, p. 1456; 1 L. 1867, ch. 375, § 1, p. 834; L. 1874, ch. 12, §§ 1, 8). The business of the appellants was a public nuisance, and not entitled to any protection in equity upon the facts shown (*Rex* v. *Wigg*, Salk. 460; s. c. 2 Ld. Raym. 1163; *Catlin* v. *Valentine*, 9 Paige, 575; *Peck* v. *Elder*, 3 Sandf. 126; *Brady* v. *Weeks*, 3 Barb. 157; *Harris* v. *Thompson*, 9 Id. 364).

This suit is anomalous. It is an attempt, by persons fearing criminal prosecution in the criminal courts, to induce a court of equity to try the issue, and meanwhile to restrain the officers of the law from enforcing it. There is no pretense that the respondents were about to act with *malice*, or to violate any process of law, or to make any forcible entry, or to do any other act illegal in itself. The statute authorizes arrests by the agents of the society, duly designated for that purpose, for violations of the laws for the prevention of cruelty to animals (1 L. 1866, ch. 469, § 8; *Stage-horse Cases*, 15 Abb. Pr. N. S. 51). Yet it is insisted by the appellants, that these agents, act-

ing without malice, must be restrained from making any such arrests, in a legal manner, of the appellants or their employees, until the present suit establishes their liability to arrest; and this when the facts may differ in the case of each individual arrest. It is as if a person threatened by a police officer with arrest for receiving stolen goods should bring suit in equity to restrain such arrest, as an interference with his business; and then, on the officer showing that the real ground of interference was the alleged felony, should deny the latter, and ask the court issuing the injunction to try the issue whether any felony had been committed. Suppose a police officer learns of a cock-fight about to take place in a cock-pit, and he goes there and warns the proprietor that if he proceeds he will have him arrested. The latter then brings suit in equity, alleging that he sells liquor under a license, and that the policeman has threatened to interfere with his business by arresting him and his employees. The policeman shows by affidavit, on motion to continue an *ex parte* injunction, the facts of the keeping of the cock-pit—a statutory misdemeanor. Now, then, (*a*) Will the Court in Equity try the issue of misdemeanor or no misdemeanor upon affidavits, when the question is one between the people and the plaintiff, and properly within the jurisdiction of the criminal courts? (*b*) Will such Court of Equity order its own jury to try the issue whether a misdemeanor has been committed or not, and thus usurp the functions of the jury in the criminal court where that issue is properly triable? (*c*) Will it sustain an injunction against an officer, restraining him from enforcing a penal statute by proceeding in the ordinary forms of criminal procedure for the arrest and punishment of the alleged offender?

The people of the State have the right to be represented on the trial of any such issue by their law officer the district attorney. The question of cruelty or no cruelty is a matter at issue between the people and these plaintiffs. It is not pretended that this court can, by injunction, restrain either the people or the district attorney from so proceeding. Will it then restrain the officers of this society, who are but the legal agents of the people, and their executive officers in the arrest of offenders against these particular laws against cruelty, from doing their duty?

CHARLES P. DALY, Chief Justice.—If the act of the Legislature is unconstitutional, and confers no authority to make the arrest, or the arrest is under the statute itself unjustifiable, the party injured has his remedy by an action at law, and there is no ground for the interference of the court by injunction.

The plaintiffs allege in their points, that no adequate remedy exists at common law upon the facts in this case, but they have failed to show it, or, at least, I see nothing that would warrant the court in coming to that conclusion.

I have nothing to add to the reasons given by Judge Larremore to show that this is not a case in which the court should interfere by injunction; that if there is an unlawful interference by arresting the plaintiffs, or any of their workmen, the remedy is an action for damages on the part of the person so arrested.

The order below should be affirmed.

JOSEPH F. DALY, J., concurred.

Order affirmed.