NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—July, 1883.

## BARKER V. SMITH.

*In the matter of the judicial settlement of the account of
the sole acting executor of the will of* WILLIAM
SMITH, *deceased.*

Testator, at the time of his death, owned certain shares of railroad stock
which were regarded as worthless, and were so inventoried.   By a reor-
ganization these shares became convertible into those of the stock of
another railroad, and valuable.   The executor effected the conversion,
and, after an interval during which the shares fluctuated in price,
bought the shares so converted by him, at private sale, for his own ac-
count.   Upon his accounting before the Surrogate, the parties being
disposed to sanction the purchase,—

*Held,* that the executor was bound to exercise only such care and judgment,
as to the time and price of sale, as prudent men are wont to display in
their own affairs, and that, in the absence of evidence of dereliction on
the part of the executor, in not disposing of the stock on the day when
it attained what subsequently proved to be its maximum value down
to the time of his purchase, he was chargeable only with the market
value on the day of sale, with interest.

OBJECTIONS, by James W. Smith, sole acting executor
of decedent's will, to the confirmation of the referee's re-
port upon his accounting.   The account was contested by
Charity Barker, residuary legatee.   The facts appear
sufficiently in the opinion.

EUGENE H. POMEROY, *for executor.*

A. J. DITTENHOEFER, *for C. Barker.*

THE SURROGATE.—In November, 1881, James W.
Smith, sole acting executor of this estate, filed his ac-
count and commenced proceedings for its settlement.

Certain objections were interposed by one of the residuary legatees under decedent's will, and the issues thus presented were submitted to a referee, whose report is now before me. To the confirmation of this report the executor objects, claiming that, in several important particulars, its conclusions are erroneous.

*First.* His most important objection arises upon the following state of facts: The testator, at the time of his death, was a holder of certain shares of stock in the Toledo, Peoria and Warsaw Railroad, which were regarded as worthless, and were so described in the executor's inventory. But, in pursuance of arrangements, whose details it is needless to specify, these shares were subsequently made convertible into shares of the Wabash, St. Louis and Pacific Railroad Company, and thereupon became valuable. The executor effected the exchange, and held the new stock for a time after the conversion. Then for the sake, as he says, of settling up the affairs of the estate, he bought the same at private sale, and ever since has held them as his own. The reorganization, which had made the property valuable, had taken effect in January, 1881, and the old stock, at all times after that date and before the executor bought it, had been convertible into new. During this interval there was much fluctuation in its value. In March, it was worth something less than $48 a share; in June about $60. The executor thinks that he should be suffered to retain it at the rate of $33. The referee holds him to a liability of $60 per share, which is the highest market value the stock had attained at any time before its appropriation by the executor. This conclusion is, in my judgment, erroneous.

As this property is still in the possession of the executor, it is no doubt within the power of the court to require him to restore it to the estate (Boerum v. Schenck, *41 N. Y., 182;* Davoue v. Fanning, *2 Johns. Ch., 252;* Gardner v. Ogden, *22 N. Y., 327*). He ought not to have bought it, and ought not to be allowed to retain it against objection, even if it were admitted that he purchased in good faith and paid adequate consideration (Terwilliger v. Brown, *44 N. Y., 237;* Fulton v. Whitney, *66 N. Y., 548*). But parties entitled to object to such purchase are at liberty to sanction it, and they seem disposed to do so in the present case. They claim, however, that the executor should account for the property in question at the highest price which he could have obtained for it in the market, if he had seized the most favorable opportunity to sell it for the benefit of the estate. It seems to me that this claim, which is sustained by the referee, can only be upheld, if the evidence shows that the executor was derelict in not disposing of the stock on the very day when it chanced to attain what subsequently proved to be its maximum market value down to the time of his purchase. Now, the evidence does not show any such dereliction.

The Court of Appeals has very recently held, in a case as yet unreported (in the matter of the final accounting of Horace Gray), that an executor, who finds among the assets of his decedent's estate investments of such a nature as those now under consideration, is bound to exercise, in reference to the time and price of sale, such care and judgment as prudent men are wont to display in the management of their own affairs, and that if, in the exercise of such care and judgment, he holds such property

beyond the time when it could have been sold with the best results, he ought not to be held chargeable for the deficiency (McRae v. McRae, *3 Bradf.*, *199*).

When the doctrine is applied to the case at bar, no reason appears for charging the accounting party with any larger sum than the value of the property in question at the time he converted it. The situation is precisely the same as it would have been, if he had sold the property to a stranger on the day when he bought it himself. In that event, it is clear that he would be chargeable with the market value on the day of the sale, and interest (Stiles v. Burch, *5 Paige*, *132*).

This conclusion is supported by several decisions of our court of last resort (see Devlin v. Pike, *5 Daly*, *86;* Thayer v. Manley, *73 N. Y.*, *308;* Mechanics and Traders' Bank v. Farmers and Mechanics' Bank, *60 N. Y.*, *40;* Whelan v. Lynch, *60 N. Y.*, *469;* Ormsby v. Copper Mining Co., *56 N. Y.*, *623;* Tyng v. Warehouse Co., *58 N. Y.*, *308*).

These are cases which determine the measure of damages in suits for unlawful conversion, and, while not strictly decisive of the present contention, they furnish a strong argument, by analogy, in favor of fixing this executor's liability according to the value of the stock when he bought it. The transfer was made, the executor says, "just on or before August 10, 1881. . . . It may have been a month before." The market value of the stock at about that period I find to be fifty-four dollars per share, at which rate the executor must account for it.

*Second.* The referee errs in charging the executor with interest from the entry of the decree upon the last account-

ing, to the date of his report, upon payments found by such decree to have been prematurely made to two of the residuary legatees. This interest should not be allowed beyond the time when the Ninth street property was sold, for, at that time, the executor would have been justified in discharging the legacies, if they had not been discharged already. Of course, the only person who can receive any benefit from this charge of interest is that legatee to whom no such payment was made, and she is entitled to her proportional share only. For the balance, the executor, if charged, must also be credited, as against the beneficiaries to whom such unauthorized payments have been made.

A decree may be entered conforming to the report of the referee, except as its conclusions are modified in this decision.