Brady, J.
The plaintiff is a social club, organized under the laws of the State, and owns the real estate in this city where it has its office and meeting rooms, which are regularly used by its members, and their guests. It has been accustomed annually for many years past to give a ball, and to rent for that purpose the large building known as the Academy of Music, the club-house being too small for the purpose. In *33 connection with this ball the plaintiff has been in the habit of furnishing its members and their guests with refreshments on the night of the ball, and from 1 a. m. until 5 a. m., and this included wines and liquors of different kinds. The Academy of Music has a license to sell liquors. The plaintiff, proposing to give a ball on January 20, 1886, duly obtained a license therefor from the board of police, leased the academy for the night, paid the rental of $1000, and invested some $7000 in provisions, wines and liquors to be used by its members and their guests at the ball. The police department, under whose supervision the ball must take place, have the right and. power to close the same whenever any illegal act shall be committed. These authorities on the day the ball was to be given which they had duly licensed, notified the plaintiff’s officers of their intended interference with and arrest of the plaintiff’s members for using and distributing their liquors; and that, too,, without obtaining a warrant. This action was then commenced to prevent these contemplated acts, and an injunction obtained until the hearing of a motion to make thai remedy perpetual. It was not intended to present the wines and liquors to the members and their guests, but to sell them at a price to be determined.
Upon the hearing of the motion, it appeared by the affidavit of William II. Clincliy, who is a captain of police, that he was in charge of the police force on duty on the night of the ball, and morning following; that the ball was carried on by the plaintiff and attended by a large number of persons, according to his estimate about four thousand or five thousand persons; that a box-office was kept in the lobby of the academy, at which checks or tickets were sold to all persons applying therefor, who were thereafter admitted to the ball; and that between the hours of one and five A. M., and on January 2.8, wines. and intoxicating liquors-were publicly sold and furnished to the persons attending-the ball, and that payment therefor was then and there required and taken by the persons selling the same. The *34 statements thus made by the captain were not gainsaid, and the motion was denied.
The proposition that the police authorities may be prevented from invading the precincts of a private club-house when the intention is to interiore with its festivities, properly conducted and not amounting to a nuisance, or such a clamor as creates a breach of the public peace, and particularly, when the intention is to interfere with its property of any kind, cannot well be doubted. The authorities* so *35 ably collated by the learned counsel for the plaintiff are conclusive on the subject (Serin v. State, 55 Md. 566, 571; Commonwealth v. Smith, 102 Mass. 144; Commonwealth v. Pomphret, 137 Mass. 564, 566 ; Graff v. Evans, 8 Q. B. Div. 373, 377 ; Springhead Spinning Co. v. Riley, L. R. 6 Eq. Cas. 551, 558 ; People v. Canal Board, 55 N. Y. 390, 393 ; Davis v. American Society, 75 N. Y. 362, 369 ; People ex rel. Negus v. Dwyer, 90 N. Y. 402, 409; State Lottery Co. v. Fitzpatrick, 3 Woods C. Ct. 222).
But, as shown by the affidavit of Captain Clinchy, the ball was not confined to the members of the club, inasmuch as the tickets were publicly sold to any one who sought one, and the liquors were indiscriminately sold to the persons admitted and desiring them. These facts prevented the application of the rule established by the cases cited, and the continuance of the injunction, for the reason that the Academy of Music ceased to be a private club-house for the period during which the ball continued, the entrance to which, and privileges therein, were not confined to its members and their guests in the proper and legal sense of that term. It thus became a public festivity held in a public, not private, building, to which all could have access who paid for admission. The question, therefore, whether the police authorities have the right to invade a private club-house is not strictly presented on the facts which appear in the record. The question we are now called upon to consider is not, whether under the facts and cir *36 cumstances disclosed an injunction should have been granted, but whether it should have been continued, and, for the reasons given, it is clear it should not have been.
The order appealed from, therefore, must be affirmed, with $10 costs and disbursements.
Daniels, J., concurred.

 People v. Canal Board, 55 N. Y. 390 (Injunction refused in action by attorney-general to restrain canal board of the State from making payments to contractors with the board, in addition to the contract price, upon the ground of the unconstitutionality of the act authorizing such payments); Davis v. American Society, 75 N. Y. 362; affig 6 Daly, 81 (Injunction refused against threatened arrest and interference with plaintiff’s business in slaughtering hogs by an officer of a corporation duly authorized to make arrest for cruelty to animals, upon the ground that plaintiff did not violate the law; the question of guilt of a crime charged could not be tried in a court of .equity) ; People ex rel. Negus v. Dwyer, 90 N. Y. 402 (Injunction against members of common council passing resolution for occupation of streets by elevated railroad over mayor’s veto, sustained, and violation punished as a contempt) ; Kramer v. Police Dept. of N. Y., 53 Super. Ct. (J. & S.) 492 (Injunction refused against threatened arrest by municipal police for violation of 'law against sale of liquors in auditorium of theatre; following Davis v. American Society, above); State Lottery Co. v. Fitzpatrick, 3 Wood's C. Ct. 222 (Injunction granted by the federal courts, restraining State .officers from arresting or otherwise interfering with officers and agents of a corporation for the sale of lottery tickets upon a claim that the «charter authorizing such acts had been repealed by the legislature, such .attempted repeal being held unconstitutional); Springhead Spinning Co. v. Riley, L. R. 6 Eq. Cas. 551 (Injunction sustained, restraining •the officers of a trades-union from issuing placards and advertisements ■ intimidating and preventing workmen from hiring themselves to the -plaintiffs, to the injury of their business and property, such acts .amounting to a crime).
Graff v. Evans, L. R. 8 Q. B. Div. 373 (Manager of an institution ¡carried on bona fide as a club and supplying intoxicating liquors to members at fixed prices for the profit of the club, not guilty.of selling liquors by retail) ; Commonwealth v. Smith, 102 Mass. 144 (Indictment *35 for a liquor nuisance; defendant’s purchase of liquors as agent of a club, and delivery thereof, from time to time upon the presentation of checks which were issued to members for the money advanced, defendant being allowed the residue of undelivered liquors as compensation for his services and for the use of the room, held, not a sale of liquors as matter of law, but a question for the jury as to whether the facts amounted to an evasion of the law) ; Commonwealth v. Pomphret, 137 Mass. 564 (Proof of the facts appearing in the case of Commonwealth v. Smith \above\ not sufficient to sustain a conviction for keeping intoxicating liquors with intent to sell the same).