(Decided 16th March, 1881.)

JOSEPH T. BROWN, Trustee, and others *vs.* THE MARYLAND MINING AND MANUFACTURING COMPANY, and others.

*Marshalling of Securities—Defective Mortgages to secure Coupon Bonds—Notice—Judgments—Coupons Attached to, and Detached from Bonds—Coupons lifted by a Bank, as Agent.*

The Md. F. M. and M. Co., on the 1st July, 1868, executed a mortgage of all its property to B., and others, to secure the payment of $100,000 of coupon bonds, issued at the same time by the company. On the 1st January, 1870, the company executed to the same parties another mortgage of the same property, to secure the payment of other $100,000 of coupon bonds, issued at the same time by the company. On the 30th October, 1872, the company executed to S. and T., a mortgage of the same property, to secure the payment of two promissory notes in favor of K. and C., amounting to $30,000. On the 28th March, 1873, U. D. obtained judgment against the company for $1179.07, and issued execution, which was levied on the company's property. D. assigned the judgment

Brown, Trustee, *et al. vs.* The Freestone Min. & Man. Co., *et al.*

on the 26th August, 1873, to H., president of the company. On the 14th October, 1874, B. levied an attachment on the company's property, for $3687.72. It being discovered in 1874, that the mortgages were defective, in consequence of their not having been acknowledged in accordance with the requirements of the Code, and not having the required affidavit of consideration, nor the corporate seal affixed, on the 12th October, 1874, a resolution of the company, authorized deeds to be executed, confirming what was contained in each of the mortgages, which deeds were accordingly duly executed on the 16th, 19th and 20th October, 1874, respectively, and acknowledged and recorded the first on the 20th, and the other two on the 22nd October, 1874. Default having been made in the payment of the coupons of the first series of bonds, B., trustee, at the request of the holders of some of the said bonds and overdue coupons, filed a bill in equity, on the 4th November, 1874, to obtain a sale of the property of the company, and to determine how the proceeds should be distributed. HELD:

That the property should be sold for the payment of the claims against it, in the following order:—

1st. The costs of the proceedings and the trustee's commissions.

2nd. H. assignee of U. D's judgment less $185.79, part of said judgment; as it appeared, that in 1872 the company executed two notes to W. H. D. one for $600 and the other for $347.72 afterwards endorsed to U. D.; that W. H. D. had no notice of the mortgages; that in 1872 U. D. had dealings with the company by which it became indebted to him $185.79, balance due him on a settlement of accounts on the 1st August 1872, on which causes of action he obtained the judgment for $1179.07; and as the $185.79 was a debt incurred by the company after U. D. had heard from common report that the company had issued bonds and executed mortgages to secure them, which report was sufficient to put him on enquiry, and notice should be imputed to him.

3rd. B's judgment of condemnation, as the debt was contracted before the deeds of 1874 were recorded, and without notice of the defective mortgages.

4th. O. having filed in the proceedings second mortgage bonds to the amount of $5000 with the coupons, and there being no evidence, that he had notice of the first series of bonds or of the defective mortgage to secure them, nor anything appearing on the face of the second series of bonds or their coupons to indicate that a first series had been issued and a mortgage executed to secure their

payment, and if it should further appear, that O. purchased the bonds filed by him before the recording of the confirmatory deed, his $5000 worth of bonds and coupons would be entitled to payment next in order; but if it should appear that they were obtained by him after the confirmatory deed was duly recorded, then their payment should be deferred until the holders of the first series of bonds and their coupons shall have been paid.

5th. The bonds secured by the first mortgage and their coupons, whether attached to, or severed from the bonds and transferred and held *bona fide*, should be paid *pari passu.*

6th. The bonds secured by the second mortgage with their coupons, whether attached or detached and transferred, the holders having taken them with knowledge of the prior mortgage, should be paid *pari passu.*

7th. The notes secured by the third mortgage C. and K., having had knowledge of the bonds and of the two prior mortgages.

8th. All other claims against the company payable ratably, including the claim of coupons filed in the proceedings by the receiver of a bank, it appearing that the bank did not purchase the coupons but redeemed them as agent for the company and on its account, the bank being the place where the coupons were payable.

APPEAL from the Circuit Court for Montgomery County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ROBINSON and IRVING, J.

*James B. Henderson* and *William Pinkney Whyte*, for the appellants.

*Thomas Henderson* and *William H. Tuck*, for the appellees, Charles W. Hayden, Joseph A. Blunden, Hillary L. Offutt, Henry D. Cooke, Jr., Wm. H. Barnard, receiver of the First National Bank of Washington, D. C., and Henry D. Cooke, Jr., assignee of said Bank.

Brown, Trustee, *et al. vs.* The Freestone Min. & Man. Co., *et al.*

GRASON, J., delivered the opinion of the Court.

This appeal is taken from two decrees of the Circuit Court for Montgomery County, sitting in equity, and the questions presented are as to the priorities of the respective claimants in the distribution of the proceeds of the sales of the property decreed to be sold.

It appears from the record that on the first day of July in the year 1868, the Maryland Freestone Mining and Manufacturing Company of Montgomery County, Maryland, a corporation under the general incorporation laws of this State, made and executed coupon bonds, each for the sum of five hundred dollars, to the amount of one hundred thousand dollars, payable at the First National Bank of Washington City in the District of Columbia, on the first day of January, in the year 1881, with interest at six per cent., payable at the same bank in gold coin semi-annually on the first days of January and July in each year, and at the same time executed a mortgage of all the property of the Company to secure the payment of the bonds and coupons so issued, at the times and in the order they might respectively become due and payable. On the first day of January in the year 1870, the said corporation made and executed a second series of coupon bonds of the same denomination as those of the first series and to the amount of one hundred thousand dollars, payable on the first day of January, 1885, at the same bank, with the same interest payable on the same dates and in all other respects like those of the first series, and to secure the payment of them a second mortgage of the same property as that covered by the first deed, was executed by the corporation.

On the 30th day of October in the year 1872, the corporation executed a mortgage of the same property to Henry C. Swain and William M. Tenney, as trustees, to secure the payment of two promissory notes of even date with the mortgage, one in favor of John L. Kidwell for

the sum of $24,250, and the other in favor of Henry D. Cooke for the sum of $5750; each payable at said First National Bank of Washington City, on the first day of November, in the year 1877, and bearing interest at the rate of six per cent., and payable semi-annually.

On the 28th of March, in the year 1873, Upton Darby obtained, in the Circuit Court for Montgomery County, a judgment against the corporation for the sum of $1179.07, with interest and costs, and issued execution thereon, which was levied on the lands and personal estate of the corporation; and afterwards on the 26th day of August, 1873, assigned the same to Charles W. Hayden, who was then the president and general manager of the corporation.

On the 14th day of October, 1874, Joseph A. Blunden sued out and levied an attachment on the property of the corporation for the sum of $3687.72, with interest and costs.

Some time in the autumn of 1874 it was discovered that all three of these mortgages were defective in consequence of their not having been acknowledged in accordance with the requirements of the Code and not having the affidavit as required by the 29th section of Article 25, and not having the corporate seal affixed.  On the 12th day of October, 1874, the corporation adopted a resolution authorizing and directing confirmatory deeds to be executed, confirming all that was contained in each of the original deeds, as of and from their dates, and that they should be recorded according to their original priorities. Deeds were accordingly executed and acknowledged on the 16th, 19th and 20th October, respectively, and recorded, the first on the 20th and the other two on the 22nd of October.   These last three deeds were executed and acknowledged in conformity with the provisions of the Code.

Default having been made in the payment of the coupons of the first series of bonds, Joseph T. Brown, the

trustee, named in the two first named deeds, at the instance and request of the holders of some of the said bonds and overdue coupons, filed the bill in this case on the 4th day of November, 1874, praying a sale of the property for the payment of the overdue interest. All persons interested were made parties, or came in by petition, and by agreement of the parties the auditor was appointed a special commissioner to take testimony and state accounts, showing the number and amounts of the bonds secured by the respective mortgages, and classifying them according to their respective legal priorities; and also showing the number and amounts of the various coupons for interest attached to any and all of said bonds which were due and unpaid, preliminary to the passage of a decree. Testimony was taken by the auditor, under the aforesaid order of Court, as also under a commission afterwards issued to Washington City, and a large number of bonds and coupons were filed. First mortgage bonds to the amount of $90,000 and overdue coupons belonging thereto, amounting to $23,188.25, including interest thereon from the time of their maturity to the date of the audit, were filed. In the latter sum was included $2120.70 of coupons, which were filed by Edwin L. Stanton, receiver of the First National Bank of Washington and which had been detached from the first mortgage bonds held by other parties. Charles W. Hayden, the secretary and treasurer of the company also filed over $2000 worth of detached coupons of the first mortgage bonds. The commissioners of the Freedman's Saving and Trust Company filed second mortgage bonds to the amount of $95,000, and overdue coupons belonging thereto, with interest to the date of the audit, amounting to more than $30,000. Stanton, receiver of the First National Bank, also filed coupons of the second mortgage bonds aggregating $536.55, and Hillary L. Offutt filed second mortgage bonds to the amount of $5000, with all the coupons belonging to them.

The auditor having failed to decide the questions of priorities of these claimants, the case was submitted to the Court upon the pleadings and evidence, and on the 5th day of April, 1878, a decree was passed providing for a sale of the property for the payment of the claims in the following order, to wit:

1st. The costs of the proceedings in the cause, including trustees' commissions.

2nd. Darby's judgment, interest and costs.

3rd. Blunden's judgment, interest and costs.

4th. Offutt's $5000 second mortgage bonds, with the coupons belonging to them and overdue at time of sale of the property.

5th. Overdue detached coupons of *all* bonds held and filed by parties other than the holders of the bonds.

6th. First series of bonds with the coupons overdue at time of the sale.

7th. Second series of bonds, (other than Offutt's $5000,) including coupons overdue at time of sale.

8th. Kidwell's and Cooke's notes with interest.

9th. All other claims filed and proved.

Afterwards, on the 21st day of November, 1878, the Circuit Court, upon petition filed to modify its decree, changed the fifth, sixth and seventh clauses of the decree so as to authorize payment to the coupon and bond holders, specified in said clauses respectively, who should be *bona fide* holders for *valuable consideration.* No question has been made in either the briefs or in the arguments of counsel as to the correctness of the decree in so far as it directs a sale of the property covered by the mortgages.

The only questions raised relate to the order in which the respective claims filed are entitled to be paid, and there is no question that the costs of the proceedings in this cause, and the trustees' commissions are to be first paid out of the proceeds of sale.

The judgment of Darby was assigned to Hayden on the 26th day of August, 1873. It appears that in 1872 the

corporation executed two notes to William H. Dougal, one for six hundred dollars and the other for three hundred and forty-seven dollars and seventy-two cents, and that they were afterwards endorsed to Darby. It does not appear that Dougal had any notice whatever of the mortgages, which had been executed by the corporation in 1868 and 1870. In 1872, Darby had dealings with the corporation by which it became indebted to him in the sum of $185.79, that sum being the balance due him on a settlement of their accounts on the first day of . August, 1872. He obtained a judgment on these causes of action for $1179.07 with interest and costs in March, 1873, and entered them to the use of C. W. Hayden, who was secretary, treasurer or president of the corporation from 1867 to 1875.

Darby is clearly entitled to priority over all other creditors of the corporation in the payment of his judgment less the sum of $185.79. This last amount was a debt which the corporation incurred after Darby, according to his own evidence, had heard, from common report, that the corporation had issued bonds and executed mortgages to secure them. Such common report was sufficient to put him upon inquiry, and had he made inquiry he would certainly have found that such bonds had been issued and mortgages executed and recorded; and though the latter were defective, actual notice of their existence would have been sufficient. Hayden, the assignee of the judgment, is therefore, entitled to a preference in the payment of said judgment less the sum of $185.79, part of said judgment.

The debt to Blunden was contracted before the mortgages of 1874 were recorded, and without notice of the previous defective mortgages, and his judgment is entitled to be paid next after the judgment of Hayden as above provided.

There is no evidence in the record that Offutt had any notice of the first series of bonds, or any actual notice of

the mortgage to secure them, nor is there anything appearing on the face of the second series of bonds, or their coupons, to indicate that a first series had been issued by the company, and a mortgage executed to secure their payment. If Offutt purchased these bonds before the recording of the confirmatory mortgage; that is before the 16th day of Octobor, 1874, his five thousand dollars' worth of the second series of bonds and their coupons, are entitled to payment next in order after the payment of the judgment of Blunden. But if they were obtained by him after said mortgage was duly recorded, then their payment must be deferred until the holders of the first series of bonds and their coupons have been paid. There is no proof in the record to show at what time he purchased them, but it may be supplied in the Court below when this cause is remanded.

When this case was before us at the April Term, we were of opinion that the *detached* coupons of both the first and second series of bonds, in the hands of *bona fide* holders for valuable consideration, were entitled to payment *pari passu,* next after the payment of the five bonds of the second series, in the hands of Offutt, and their coupons. Upon the re-argument we have been referred by the counsel of the respective parties to several authorities upon this point, and they have been carefully considered. Some of the cases referred to by the appellants, hold that an assignee of one or more of several notes, secured by mortgage, is entitled to a priority in payment out of the proceeds of a sale of the mortgaged premises over the assignor, the holder of the other mortgage notes, and it is therefore contended that, the assignees of the detached coupons, should also be preferred to the holders of the coupons attached to the same bonds in the hands of the holders of the bonds. Whatever the law may be in other States, it has been settled in this State that the assignee of a mortgage note is not entitled to

priority over the assignor, who holds other notes secured by the same mortgage. *Dixon vs. Clayville, Adm'r,* 44 *Md.,* 580. In *Stevens vs. The New York and Oswego Midland Railroad Company,* 13 *Blatchford Cir. Court R.,* 417, it was held that the interest on the bonds should be paid before the bonds themselves. But Judge BLATCHFORD based this ruling upon the terms of the mortgage which provided that in case of default and sale of the mortgaged premises, the principal and interest should be paid " according to the tenor and effect of the mortgage." In the mortgage in the case now before us there is no power of sale. The company became insolvent, and thereupon the whole principal and interest became due and payable out of the proceeds of sale, and the holders of the first mortgage bonds and their coupons, became entitled to payment next in order after the claims hereinbefore mentioned, as entitled to a preference over them, whether such coupons were still attached to the bonds, or whether they had been severed from them and transferred to other parties. We can see no reason for giving a preference to coupons which have been detached from the bonds and transferred to other parties, over those which still remain attached to the bonds, and we fully concur in the views expressed by Mr. Justice STRONG, in delivering the opinion of the Supreme Court in the case of *Kitchum vs. Duncan,* 6 *Otto,* 670. In that case detached coupons had been purchased by Duncan, Sherman & Co., and by them transferred to. Duncan, who was a member · of that firm, as well as a director of the railroad company. It was contended that, inasmuch as Duncan, Sherman & Co. were the financial agents of the railroad company, the coupons held by them should be considered as paid by the railroad company ; but the Court, after deciding that the coupons could not be considered as paid by the railroad company, because the firm had paid its own money for them, said : " But we think that they (the coupons) have no equity superior to

that of the bonds from which they were taken, or the subsequently maturing coupons. The mortgage was given as a security for the principal of the bonds as well as the interest, with no priority to either. The coupons are mere representatives of the claim for interest. The obligation of the debtor evidenced by them cannot be higher nor entitled to greater privileges than it would be had the bonds in their body undertaken the payment of interest. Cutting them from the several bonds of which they were a part, and transferring them to other holders, can give them no increased equities, so far as we can perceive. * * * * * A transfer or assignment of a claim, secured by a mortgage given to protect that claim, in common with other claims contemporaneously originating, would seem to refer the transferee to the common security, and measure his rights and equities by that. It is in vain to urge that as between the person transferring and the transferee there is an equity, or even a moral obligation, if it was the the intention of the parties to participate *pari passu* in the proceeds of the property pledged as a security. And such an intention may well be inferred from an assignment or transfer without guaranty. The meaning of such a transfer without more is, that the transferee takes precisely the rights of the person from whom he takes his title, and no more. But certainly such a transfer cannot have the effect of giving to the transferee greater rights than those created by the mortgage." It was accordingly held in that case that coupons detached and transferred had no preference over the bondholders and other coupon holders. We think the rule thus laid down by the Supreme Court is the correct one to be applied to this case, and it therefore follows that the bonds secured by the first mortgage and their coupons whether attached to or severed from the bonds, and transferred and held *bona fide* must be paid *pari passu* next in order after the payment of Offutt's five bonds of the second series and their coupons.

It is clear from the evidence, that the Freedmen's Savings and Trust Company took their ninety-five thousand dollars worth of the bonds secured by the second mortgage, and the coupons held by it, with full and actual notice of the prior mortgage, and its claim is not entitled to payment until the bonds secured by the first mortgage, and their coupons have been paid in full. The rule we have announced with respect to the coupons of the first mortgage bonds applies as well to those of the second series of bonds, and, therefore, whether detached and transferred or not, they and the bonds must be paid *pari passu.* The notes, secured by the third mortgage, are not entitled to payment until the bonds and coupons, secured by the first and second mortgages, have all been paid. Cooke and Kidwell, to whom the notes, secured by the third mortgage, were given, were officers of the Maryland Free Stone Company, and therefore notice of the bonds and the two prior mortgages must be imputed to them, and payment of their claims under the third mortgage must be postponed until those bonds and coupons have been paid. After the above-mentioned claims have been paid, then all other claims against the Mining Company are to be paid ratably, and, included in this class is the claim of the First National Bank of Washington City. The proof clearly shows that the coupons held by the Bank were not *purchased,* but redeemed by it, as the agent and on account of the Mining Company. The Bank was the place at which the coupons were payable, and Latham, its teller, proves that he never knew the Bank to buy such coupons as articles of trade or merchandise in the course of its business; but that he paid the coupons, by direction of its officers, and that, when the Mining Company did not have cash on deposit in the Bank, the coupons were paid by the Bank for and on account of the company. That this was done a number of times, and the coupons were then thrown into the cash

and thus carried till the company lifted them.   The claim of the Bank comes, therefore, clearly within the principle applied by this Court to the coupons of the preferred bonds of the Chesapeake and Ohio Canal Company, assigned by Selden, Brothers & Co. to the Commonwealth of Virginia, and must be governed by it.   *Ches. & Ohio Canal Co. vs. The Commonwealth of Virginia and others,* 32 *Md.,* 501.

*Decree reversed and*
*cause remanded.*

(Decided 16th March, 1881.)