## COMMONWEALTH *vs.* WILLIAM POMPHRET.

Hampden.  Sept. 23. — Oct. 27, 1884.  C. ALLEN & COLBURN, JJ., absent.

If, in a city which has voted to grant licenses to sell intoxicating liquors, a club, composed of a number of persons, who pay an admission fee upon joining it, and to which all who desire cannot obtain admission, owns a quantity of such liquors, and employs one of its members as a steward, to whom it pays a certain sum for his services and for the use of the room in which the liquors are kept, and who delivers the liquors to the other members upon presentation of checks ·representing a certain sum, which are sold by him to them at a certain rate, and the money received for which is used by him in buying liquors in the name and as the property of the club, he cannot be convicted, under the Pub. Sts. *c.* 100, of keeping intoxicating liquors with intent to sell the same.

COMPLAINT alleging that the defendant, on September 27, 1883, at Springfield, kept intoxicating liquors with intent unlawfully to sell the same in this Commonwealth.  Trial in the Superior Court, before *Knowlton*, J., who, after a verdict of guilty, and with the consent of the defendant, reported the case for the determination of this court, in substance as follows:

It appeared in evidence, that, on the day named in the complaint, a quantity of intoxicating liquors was seized under a search warrant at the house occupied by the defendant.  The defendant testified, and, for the purposes of the trial, his testimony was admitted to be true, that he was a member of a club of about one hundred and fifty persons, which was organized several weeks before the seizure, for the purpose of furnishing its members with refreshments, and which had as officers a president, secretary, treasurer, and executive committee, and which employed him as steward, and paid him a certain sum per month for his services, and for the use of the room in which said liquors were found; that, in accordance with the terms of that organization, each member, upon joining the club, paid to the treasurer an admission fee of one dollar, and received a card certifying his membership; that the money so obtained was used in buying a variety of liquors in the name and as the property of the club; that a quantity of checks was printed, each representing the sum of five cents; that it was the defendant's duty as steward to furnish these checks to individual members in such numbers as were called for, and to receive pay for them at the rate of five

cents each, to take care of the liquors of the club, to deliver them to the members for drinking in quantities as called for, and to receive the price of them in checks upon delivery; that the liquors seized were the property of the club, obtained and designed to be used under the above arrangement, and were in his custody as steward; that he formerly had a license to sell intoxicating liquors at this place, to be drunk on the premises, but had none at the time of the seizure. It also appeared that, at the preceding municipal election in Springfield, it was voted to grant licenses for the sale of intoxicating liquors.

The defendant asked the judge to rule that there was no evidence to warrant a conviction of the offence charged.

The judge declined so to rule; and instructed the jury as follows: "If an association of persons, of whom the defendant was one, owned a quantity of intoxicating liquors, which they kept under an arrangement to furnish them in such quantities as might be required, to be drunk on the premises, to such members of the association as should call for them, in return for checks which represented certain designated values, and which were obtained from the defendant as a steward of the association, and were paid for when obtained at the price which they purported to represent, and the defendant was one of the persons keeping these liquors for said purpose, and was personally in charge of them, furnishing them in return for said checks, the jury may find that said liquors were kept by him for unlawful sale."

If the refusal to rule as requested, and the instructions given were correct, the verdict was to stand; otherwise, the verdict to be set aside, and a new trial granted.

*J. B. Carroll,* for the defendant.

*E. J. Sherman,* Attorney General, for the Commonwealth.

FIELD, J. The instructions given, in their application to the facts in evidence, do not seem to us to differ materially from the instructions which were held erroneous in *Commonwealth v. Smith,* 102 Mass. 144, except that, in that case, the court below ruled that the facts supposed "would be a sale by the defendant;" and, in this case, the court ruled that, from the facts supposed, "the jury may find that said liquors were kept by" the defendant, "for unlawful sale." This change in the ruling may

have been made for the purpose of meeting the suggestion found in the opinion in *Commonwealth* v. *Smith*, that the arrangement described "may have been a mere evasion of the law," which "would be a question not of law but of fact, and would fall wholly within the province of the jury."

The Legislature, within the limitations of the Constitution, can prohibit under a penalty any acts it sees fit. The meaning of the statutes must be determined by construction, and criminal statutes are to be construed strictly, although the whole scope of the statutes must undoubtedly be considered.

The Legislature, by the Pub. Sts. c. 100, § 1, has prohibited the selling, or exposing or keeping for sale, spirituous or intoxicating liquor, except as authorized in that chapter. It has not undertaken to prohibit the drinking or buying of intoxicating liquor, or the distribution of it in severalty among persons who own it in common. If therefore two or more persons unite in buying intoxicating liquor, and then distribute it among themselves, they do not violate the statute, and the intent with which they do this is immaterial. If they intend in this manner to obtain intoxicating liquor to drink, without thereby subjecting any person to the penalties of the statute, they still act with impunity, because what they do is not prohibited by the statute. The evasion of the law intended in *Commonwealth* v. *Smith* is an evasion by means of a form or device which is apparently legal, while the substance of what is done is within the prohibition of the statute.

In that opinion, it is said, "If the liquors really belonged to the members of the club, and had been previously purchased by them, or on their account, of some person other than the defendant, and if he merely kept the liquors for them, and to be divided among them according to a previously arranged system, these facts would not justify the jury in finding that he kept and maintained a nuisance, within the meaning of the statute under which he is indicted. There would be neither selling, nor keeping for sale. On the other hand, if the whole arrangement were a mere evasion, and the substance of the transaction were a lending of money to the defendant, that he might buy intoxicating liquors to be afterwards sold and charged to his associates, or if he was authorized to sell or did sell, or keep any of

the liquors with intent to sell, to any persons not members of the club, he might well be convicted." The "previously arranged system" referred to was similar to that in the case at bar in many respects.

The word "club" has no very definite meaning. Clubs are formed for all sorts of purposes, and there is no uniformity in their constitutions and rules. It is well known that clubs exist which limit the number of the members and select them with great care, which own considerable property in common, and in which the furnishing of food and drink to the members for money is but one of many conveniences which the members enjoy. If a club were really formed solely or mainly for the purpose of furnishing intoxicating liquors to its members, and any person could become a member by purchasing tickets which would entitle the holder to receive such intoxicating liquors as he called for, upon a valuation determined by the club, the organization itself might show that it was the intention to sell intoxicating liquors to any person who offered to buy, and the sale of what might be called a temporary membership in the club, with a sale of the liquors, would not substantially change the character of the transaction. One inquiry always is whether the organization is *bona fide* a club with limited membership, into which admission cannot be obtained by any person at his pleasure, and in which the property is actually owned in common, with the mutual rights and obligations which belong to such common ownership, under the constitution and rules of the club, or whether, either the form of a club has been adopted for other purposes, with the intention and understanding that the mutual rights and obligations of the members shall not be such as the organization purports to create, or a mere name has been assumed without any real organization behind it.

The decisions of other courts which are pertinent undoubtedly turn more or less upon the particular language of the statute construed. *Graff* v. *Evans*, 8 Q. B. D. 373, was decided on the ground that there was no transfer of the general or absolute property, but a transfer of a special interest, as all the members of the club were owners in common; and that, as the club was *bona fide* a club, the furnishing of liquors to a member was not a sale, within the meaning of the English Licensing Act of

1872. *Seim* v. *State*, 55 Md. 566, was decided upon the same general ground.

In *Rickart* v. *People*, 79 Ill. 85, the court say: "The whole thing is a subtle artifice, planned with a view to avoid the penalties denounced against persons violating the law." "The proposition is absurd, that the ticket-holders really owned the liquors with which the bar was stocked." The court also say that, if the theory of the defence were adopted, "the liquors would belong to the company as partnership stock, and the company would have no more rightful authority to sell to the individual members, or partners, at retail, without a license to keep a dram-shop, than a mere stranger would have." "But the alleged association is a mere fiction." "The statute makes the giving away of intoxicating liquors, or other shift or device to evade its provisions, unlawful selling." "It was a question of fact whether the association was a mere shift, or device, to evade the provisions of the law, and the jury having found it was, we see no reason to be dissatisfied with the conclusion reached."

In *Marmont* v. *State*, 48 Ind. 21, it was distinctly decided that the delivery by the club or society, through its agent, of beer which was the common property of the society to a member of the society, upon credit or for cash, and which thereby became the separate property of the member, was a sale within the meaning of the Indiana statute of 1873. *State* v. *Mercer*, 32 Iowa, 405, resembles *Marmont* v. *State*. To the same effect is *Martin* v. *State*, 59 Ala. 34.

The decision of the case at bar is not to be governed wholly by any general definition of the word "sale," or "selling." After the decision in *Commonwealth* v. *Smith*, the St. of 1875, c. 99, was passed, which is the foundation of those provisions in the Pub. Sts. c. 100, under which this complaint was made. Nothing is contained in that act, or in any subsequent acts, which, in terms, relates to clubs, until the St. of 1881, c. 226, was passed. The provisions of the Public Statutes prohibiting the selling or exposing or keeping for sale of spirituous or intoxicating liquor, except those derived from the St. of 1881, c. 226, are similar to those contained in the St. of 1868, c. 141, which were construed in *Commonwealth* v. *Smith*. The St. of

1881, *c.* 226, is perhaps broader in its terms than was necessary to accomplish its apparent purpose; because no doubt has been expressed that a selling of intoxicating liquors by a club to persons who are not members is an illegal sale under other statutes, unless the club is duly licensed to make the sale. The intention of this statute, however, plainly is to distinguish between clubs in those cities and towns whose inhabitants vote to grant licenses, and clubs in those whose inhabitants vote not to grant licenses, and unlicensed clubs in the former cities and towns are left to be dealt with under other statutes. It must be assumed that the decision in *Commonwealth* v. *Smith* was known to the Legislature at the time the existing statutes were passed. The inference is, that the Legislature intended that unlicensed clubs in cities and towns whose inhabitants vote to grant licenses must be dealt with according to the construction given by this court to statutory provisions similar to those in existing statutes prohibiting the sale, or exposing or keeping for sale, of intoxicating liquors.

The ruling and instruction in this case seem to us to assume that this was *bona fide* a club; that the liquors were owned in common by the members; that they were furnished only to members; and that they were kept by the defendant as one of the members and as steward of the association. It does not appear in the exceptions in what manner new members were admitted, except that they paid an admission fee of one dollar, but we cannot assume that any person could join the association at his pleasure; and the ruling and instruction are not put upon the ground that there was evidence that this was an association open to anybody at a price. On the assumptions upon which we understand the instructions to proceed, we think that, under the decision in *Commonwealth* v. *Smith*, it was not competent for the jury to find the defendant guilty.

*New trial granted.*