## THE PEOPLE v. GEORGE H. SOULE.

*Liquor traffic—Social club—Sale of liquors without payment of tax—Information.*

1. A club properly organized for social purposes, and in good faith, under Act No. 22, Laws of 1883, cannot distribute liquors among its members, receiving pay therefor as distributed by the glass, which goes into the club treasury, to be used in purchasing other liquors or in paying expenses, without being liable under the laws of this State to pay a retail tax for selling such liquors.

2. The object of the liquor law of 1887 is to tax the business of liquor selling wherever found, or by whom carried on, and reaches a club-house or a private house, as well as a saloon or tavern, and includes all persons engaging in such business.

3. A person is properly informed against as principal, under section 24 of the liquor law of 1887, who is found, at a place of business, engaged in the sale of liquor at retail, without having paid the required tax, and who in his defense shows that he is so selling as agent, clerk, or servant of a corporation which has not paid such tax or complied with the statute.

Exceptions from superior court of Grand Rapids. (Burlingame, J.) Argued January 29, 1889. Decided February 20, 1889.

Information for selling liquor without paying tax. Conviction affirmed. The facts are stated in the opinion.

*Eggleston & McBride,* for respondent.

*S. V. R. Trowbridge,* Attorney General, *W. J. Stuart,* Prosecuting Attorney (*Stuart, Knappen & Van Arman,* of counsel), for the people.

[The points of counsel and authorities are fully discussed and reviewed in the opinion.—REPORTER.]

MORSE, J.   The respondent was informed against in the superior court of Grand Rapids for engaging in the business of selling at retail spirituous, malt, brewed, fermented, and vinous liquors without first having paid to the county treasurer the tax provided by law therefor, and without having received from the county treasurer, and posted up in his place of business, a tax receipt; the said Soule not being a druggist, etc.   He was tried and convicted of the offense charged, and this case comes to this Court for review on exceptions.

The facts admitted in the case, and upon which conviction was had, are as follows:

"On March 5, 1888, the 'New Era Club of Grand Rapids,' was duly incorporated pursuant to Act No. 22 of the Public Acts of 1883 of this State, and during the month of September, 1888, said club occupied rooms in a building at No. 341 South Division street, in said city, for club purposes; that the rooms were leased by the club, at a rent of $35 per month; that respondent was a member of the club, and its treasurer and manager, in the employ of the club; that among the provisions kept by the club for its members was liquor,—spirituous, malt, brewed, fermented, and vinous,—which the respondent, as such employé, purchased for the club out of the club funds, on the order of the club, and kept in said club-room for the club, and that he, as such employé, dispensed said liquors to members of the club, as they called for it, by the glass, the members paying for the same five cents for a glass of beer or poor cigar, and ten cents for a glass of other liquor or a good cigar, and the money so received was by him placed in the treasury of the club, and used by the club to pay its current expenses and replenish the stock of the club, and that members claimed and exercised the right—as they were permitted by the rules of the club—to bring with them, to the club-room, friends who were not members, and to buy from the club stock, and give to such friends, any of said liquors by the glass, to be drank in the club-rooms, and that respondent, as employé of the club, dispensed such liquors on demand; and that such disposition of liquors and cigars was carried on throughout the

whole month of September, 1888; and that neither said club, any of its members, nor said respondent paid the tax prescribed by law for engaging in the business of selling at retail spirituous, malt, brewed, fermented, or vinous liquors, nor were any of them druggists, nor was said place where said club was held a drug-store."

The superior court judge instructed the jury that a club like this, although legally organized under the laws of this State, engaged in part in purchasing liquors in quantity for the use of. the club, and having it dispensed to its members by a servant of the club, they paying for it as they receive it, is as much legally bound to pay the tax and exhibit the receipt as is a retail dealer in such liquors; that the purchase of liquors by a club, and selling it out to its members at retail, for the usual prices paid therefor in saloons and bars, or the vending of such liquors to members to be presented to friends of members by way of treats, constitutes engaging in the business of selling at retail such liquors, for which the club is obliged to pay the tax, and obtain and exhibit the receipt; and that if the club was engaged in the business, as aforesaid, without having paid said tax, then its servants, agents, and employés, engaged as such in said business, if they have not paid the tax, are equally liable with their principal therefor; and, further, as follows:

"Under this instruction, if you find that respondent, acting as the treasurer of this club, at the time charged in the information, kept in his possession the liquors of the club, and sold such liquors out to the members at retail, and that such club and respondent did not pay the tax required by law to be paid by persons engaged in selling such liquors at retail, and were not druggists, then the respondent would be guilty of the offense charged."

The counsel for the respondent contend:

1. That the club is not liable for the tax.
2. If the club is obliged, under the law, to pay the

tax, the respondent cannot be held, under the evidence, as principal.

The element of bad faith in the organization of this club, which has been made to play an important part, in the disposition of the main question involved here, by some of the courts, seems to be eliminated from this record. The question is fairly raised whether a club properly organized, and in good faith, under Act No. 22, Laws of 1883, can distribute liquors among its members, receiving pay for such liquors as they are distributed by the glass, the proceeds to go into the treasury of the club, to be used in purchasing other liquors or in paying expenses, without being liable under the laws of this State to pay a retail tax for selling such liquors. There is a diversity of opinion among the authorities on this question.

Before examining the same, it seems to us to be proper to examine the policy of our present laws on the subject of the sale of intoxicating liquors. In 1875 the Legislature repealed the prohibitory law, which had been on trial for 20 years, and adopted in its stead the principle of restriction and taxation of the liquor traffic. This method of dealing with the sale of liquors has prevailed up to the present time. This club was formed in March, 1888, while the local option law, since declared inoperative by this Court,[1] was upon the statute books, and apparently liable to enforcement. It cannot, however, in the light of this record, be said that this club was organized for the express purpose of evading this law, nor is it to be considered in the determination of this case. The local option law was never in force for a moment in Kent county, and no election was held or called under that act. The tax law was in full force and effect at the time of the organization of this club, and

---

[1] *In re Hauck.* 70 Mich. 396.

at the time of the sales of liquor complained of in this prosecution. The law provides for the payment of a tax by retail dealers in liquors, and a retail dealer is defined as follows:

"Retail dealers of spirituous or intoxicating liquors, and brewed, malt, and fermented liquors, shall be held and deemed to include all persons who sell any of such liquors by the drink, and in quantities of three gallons or less, or one dozen quart bottles or less, at any one time, to any person or persons." Section 2, Act No. 313, Laws of 1887.

Upon the "business of selling" liquors at retail, the tax is fixed at $500 per annum. Any person or persons engaged in the business of selling liquors without the payment of the tax in full are deemed to be guilty of a misdemeanor, and upon conviction shall be punished by a fine of not more than $200 and costs of prosecution, or by imprisonment in the county jail not less than 10 days or more than 90 days, or both such fine and imprisonment, in the discretion of the court. Section 7, Act No. 313, Laws of 1887. This provision of the law was not aimed at saloons or public bars alone, but it is further provided in the act that—

"All saloons, restaurants, bars in taverns or elsewhere, and *all other* places, except drug-stores, where any of the liquors mentioned in this act are sold or kept for sale, either at wholesale or retail, shall be closed on the first day of the week," etc. Section 17, Act No. 313, Laws of 1887.

It must be held, I think, that the liquors purchased and kept by this club were, before they were dealt out to the members, the property of the corporation. When the liquor was passed by the agent of the corporation, the respondent in this case, over to the individual member, it became his property, and was a sale to him, as he paid for it when it was delivered to him. He could then

do with it as he pleased,—drink it himself, give it to a friend to drink, or throw it away. Being sold within the quantity prescribed by statute, it was a sale by retail, and, the corporation or its agent making a business of it, the sales constituted the "business of selling" by retail. The law includes all persons, and the places of sale prohibited without the payment of the tax are not limited. It reaches a club-house or a private house, as well'as a saloon or tavern. The object of the law is to tax the business wherever found, or by whom carried on.

We are cited to some cases which are supposed to sup_port the contention of respondent, which we will now notice. The supreme court of Massachusetts has twice passed upon similar organizations. In the first case,—

"Several persons formed a club, of which the defendant was a member; they advanced a certain sum of money each, which was put into a common fund; the defendant was chosen agent of the club, and, under instructions of the club, purchased liquors and refreshments for the club; the fund was taken by the defendant, and invested for them, and a certain number of checks, of the amount of five cents each, were delivered.to each member of the club, to the extent of the money advanced by each. These checks were transferable only to other members of the club; upon presentation of the checks by any member to the defendant, he would deliver to that member liquor of the club to the .amount of the checks presented."

Upon "distributing" the liquor in this manner, it was calculated that the liquor would so far overrun the amount to be delivered upon the checks as to leave in undelivered liquor about 25 per cent. of the original cost. This the defendant had for his services and the use of his room for the club. The court held that—

"If the liquors really belonged to the members of the club, and had been previously purchased by them, or on their account, of some person other than the defendant, and if he merely kept the liquors for them, and to be divided among them according to previously arranged

system, these facts would not justify the jury in finding that he kept and maintained a nuisance, within the meaning of the statute,"—

Which declared that the keeping and maintaining of a tenement used for the illegal keeping and illegal sale of liquors should be punished as a common nuisance.

"On the other hand, if the whole arrangement were a mere evasion, and the substance of the transaction were a lending of money to the defendant, that he might buy intoxicating liquors, to be afterwards sold and charged to the associates, or if he was authorized to sell, or did sell, or keep any of the liquors with intent to sell, to any persons not members of the club, he might well be convicted." *Com. v. Smith*, 102 Mass. 144.

This decision was apparently grounded upon the theory that in the case, as first supposed, there would be no sale of the liquors, but simply a distribution of the common property equally among the members of the association or corporation club. This is not the case at bar. There is no equal distribution of common property here among the members of the club, but a sale by the club to the individual member without any reference to his share in the common fund, or the stock of liquors owned in common by the club.

In the case of *Com. v. Pomphret*, 137 Mass. 564, the club was organized on a similar basis with the one considered in 102 Mass., except that instead of distributing to each member, in the first place, checks representing the full value of his share in the common stock, a steward, who was paid for his services, kept checks for sale. Each member, upon joining the club, paid an admission fee of one dollar, and received a card certifying his membership. The money thus obtained was used in buying liquors. The steward furnished the checks, each representing five cents, to individual members, in such numbers as were called for, and received pay for them, at

five cents each. The steward was complained against for keeping intoxicating liquors with intent unlawfully to sell the same, and was convicted in the trial court. The supreme court held that the law had not undertaken to prohibit the drinking or buying of intoxicating liquor, or the *distribution* of it in severalty among persons who owned it in common; and that if two or more persons unite in buying intoxicating liquor, and then distribute it among themselves, they do not violate the statute, and the intent with which they do this is immaterial. The court assumed—

"That the liquors were owned in common by the members, that they were furnished only to members, and that they were kept by the defendant as one of the members and as steward of the association,"—

And granted a new trial. It does not appear that either of the clubs in these cases was incorporated.

In *Club v. Dwyer*, 11 Lea, 452, the club was incorporated under the laws of that state for literary and social purposes. In the charter of the club it was provided that "the general welfare of society, and not individual profit," was the object of the association; "and hence the members are not stockholders, in the legal sense of the term, and no dividends or profits shall be divided among the members." The initiation fee was $50, and the monthly dues $3. The club was used as a home, except for lodgings, and some of its members spent much of their time there every day. No one but members of the club had admission to the same, save friends of members living and residing outside of Shelby county, in which the club was situated. One of its leading features was musical entertainments by amateurs, at which the daughters and lady friends of the members participated. Periodicals and leading newspapers were taken and kept in

the reading-room, and a general library of books.   Among other things, the club kept a small stock of liquors, wines, and cigars, which were dispensed to the members at a price fixed by a governing committee; not with a view, however, of making any profit, which was expressly forbidden by the charter, but simply for the accommodation and convenience of its members.   The money paid for refreshments was re-invested by the secretary of the club in like refreshments used and consumed by its members.   The liquors and refreshments were in the charge and custody of an officer and servants of the club, who attended to wait on its members.

The court find that the object of the sale of the liquors was not for the purposes of profit, but merely for the purpose of covering the outlay in the purchase thereof by the corporation, and the expense attending upon the keeping and serving thereof at the club-house.   The club was held not liable to pay a tax as a retail dealer in liquors, on the ground that the liquors were not kept for sale to the public or as a traffic, being purchased out of the common fund, and kept for the exclusive use of the members of the club, and not sold for or at a profit.   It was determined that the mode of "sale," as it is termed, to the members, at a rate fixed by the governing committee of the club, is only in fact an equitable and convenient mode of distributing refreshments to its members, which are provided by the club for them exclusively; and it was squarely held that such a club had the right to purchase and keep liquors at its club-rooms for the use of its members, and to distribute it among them in any method it might deem proper, and to raise funds for the purpose of replenishing by assessments upon its members; and, further, that the mode adopted by the Tennessee club of the "form of a sale" alone to its members, of such a

quantity for so much money, could be nothing more than a mode adopted of assessing each member in proportion to the amount he consumed. Not satisfied, however, with this reason for its decision, the court reviewed the statutes of Tennessee on the subject, and held, from its construction of the same, that the legislature did not intend to impose a tax as retail dealers upon clubs organized and conducted as was the club in question in this case.

In *Seim v. State*, 55 Md. 556, the court of appeals in that state held that the license laws for sale of liquors did not apply to social clubs. In this case the corporation was known as the "Concordia," and the persons arrested for violation of a "Sunday law" were the president, secretary, and treasurer of the corporation. The statute provided that no person should "sell, dispose of, or barter * * * any spirituous or fermented liquors, cordials, lager-beer, wine, cider, or any other goods, wares, or merchandise whatsoever," on the Sabbath day, commonly called "Sunday," nor should any dealer in any of the articles give away the same on that day, under a penalty. Seim and the others were indicted under three counts,—one charging them with "selling beer," and one with "disposing of" beer, to one Springer on Sunday, and the last count with "giving away" beer as "licensed dealer." The third count was abandoned on the trial. The "Concordia" was incorporated under the general incorporation law of the state. By its charter the society was "dedicated to the intellectual, moral, and social improvement of its members, the refinement of their tastes, and the development of good feeling among them." It is to "transact no business of any kind whatsoever for the purpose of making any profit, directly or indirectly, for itself or its members." Its sources of income were set forth to be·

1. Money loaned to build club-house by its active members.

2. Entrance fee of $10 for each new member.

3. Annual fee of $30 for each member.

4. Money paid by members for what refreshments and liquors they get at the club-house.

5. Such additional assessments, fines, and penalties as may be imposed upon the members.

These moneys are expended in—

1. Paying current expenses of the corporation.

2. If there is any balance, in paying the interest on the loan of money to build club-house.

Liquors are bought by the incorporation, and kept in the club-house, in the charge of a steward, an employé of the corporation. The members of the club, and no other persons, can get what liquors they want on any day, Sundays included, by calling for them, and paying a price fixed by the corporation. This price is fixed and paid, not for profit, but to cover the outlay for liquors, and the expense of keeping and serving them at the club-house. The sale to Springer, who was a member of the club, of a glass of beer, for which he paid five cents, the price fixed, and which he then and there drank, was proven on the day charged in the indictment. The court held, as before said, that the license laws of the state had never been construed as applicable to social clubs, for the reason that such a transaction as above described is not a *sale* within the meaning of the license laws.

" The society is not an ordinary corporation, but a voluntary association or club, united for social purposes. Each member must be elected, and each is joint owner of the property and assets, and entitled to the privileges of the society as long as he remains a member. Among these privileges is that of partaking of the provisions and refreshments provided for the use of the members. These are not *sold* to him by the corporation, but furnished to him by the steward, upon his paying into the common

fund what is equivalent to the cost of the article furnished; and what is so paid is expended in keeping up the supply for the use of the members. Such a transaction is not a barter or sale in the way of trade."

There is also an English case on this subject. *Graff v. Evans*, L. R. 8 Q. B. Div. 373. The question was submitted whether the "Grosvenor Club" was liable under an act providing that—

"No person shall sell or expose for sale by retail any intoxicating liquors without being duly licensed to sell the same."

The club was a *bona fide* one, properly constituted. The objects were "social intercourse, mutual and moral improvement, aided by lectures and rational recreation." One object was also to keep the members away from the public-house. The members could obtain food and refreshments in the club, and wine and spirits, on payment. The produce of such sales went into the funds of the club. The club had no license to sell. A member of the club was shown on a certain day to have purchased a bottle of whisky and a bottle of pale ale, for which he paid. The bar-man wrapped the bottles up in paper, and the member "carried them away out of the club openly and without concealment." It was also shown that liquor to the value of £200 was sold annually to the members for consumption "off the premises," and that there was a profit on the sales to the amount of 33 per cent. on the original cost. The court held that the member buying the liquor was an owner of the property, together with all the other members of the club. Any member was entitled to obtain the goods on payment of the price.

"A sale involves the elements of a bargain. There was no bargain here, nor any contract with Graff [the barman] with respect to the goods. Foster [the member who purchased the liquor] was acting upon his rights as a member of the club, not by reason of any new con-

tract, but under his old contract of association, by which he subscribed a sum to the funds of the club, and became entitled to have ale and whisky supplied to him as a member at a certain price.   *   *   There was no contract between two persons, because Foster was vendor as well as buyer.   Taking the transaction to be a purchase by Foster of all the other members' shares in the goods, Foster was as much a co-owner as the vendor.   I think it was a transfer of a special property in the goods, which was not a sale within the meaning of the statute."

On the other hand, the selling or distributing of liquors by similar clubs, or through their agency, has been held by other courts to be in violation of statutes prohibiting the sale of liquors. *State v. Mercer*, 32 Iowa, 405, 407; *State v. Lockyear*, 95 N. C. 633; *Martin v. State*, 59 Ala. 35; *Rickart v. State*, 79 Ill. 85; *Marmont v. State*, 48 Ind. 21.

In *State v. Lockyear, supra,* the "Capital Club" was organized and carried on almost identically the same as the corporation in *Club v. Dwyer*, 11 Lea, 452. Liquors were delivered in the same way, and procured and paid for, both by the club and its members, upon almost precisely the same plan.   It was held to be a sale, and that all the elements of an executed contract were present.

"The corporate body, a legal entity, and the owner of the liquor, through its servant, the defendant, delivers it to the purchaser at his call, and receives a fixed compensation in money therefor.   The property in the goods passes and vests in the purchaser, and the money paid is received for and becomes the property of the club.   Can there be any doubt that a corporation may make contracts and deal with a corporator precisely as with a stranger, and valid obligations, capable of enforcement, be thus formed between the parties?"

The sale was held to be within, and in violation of, the local option act of that state; the county in which this club was located having adopted prohibition under said act.

In *Marmont v. State, supra*, Chief Justice Buskirk, in his opinion, says:

"As the keg of beer, when purchased, belonged to the society, the question arises whether the society, by its agent, could make a valid sale of such beer to the persons composing such society    We know of no principle of law which prevents it."

It was therefore held a sale within the meaning of a prohibitory statute.

I shall not quote further from the cases which support the position that the corporation in the case at bar was selling liquor at retail within the meaning of the statute. It appears to be a simple and unanswerable proposition that the liquor was in the first place owned by the corporation as corporate property, the same as any person might own it; that when it was delivered to a member of the corporation for money paid to the corporation or its agent, and going into its funds, it was a sale to that member, the same as if it had been passed to a stranger to the corporation in the same way, and the liquor by such sale then becomes the absolute property of the member, the same as if he had purchased it in a saloon, or at any other place where it is sold. The reasoning which I have given in the cases cited, by which such a transaction is held not to be a sale, seems to me to be unsound, strained, and sophistical. In only one case, to wit, *Com. v. Smith*, 102 Mass. 144, is there, to my mind, even the semblance of good reasoning. But in that case the association was not incorporated, and the persons uniting together each put in an equal amount of money in the first place, and were given an equal number of checks to represent their share in the liquors, which they could take upon presentation of their checks. This transaction was quite plausibly denominated a distribution of the liquors, and not a sale. But that case is not the one here before us, as heretofore shown.

Counsel for respondent admit that under section 24 of the liquor law (Laws of 1887, p. 458), Soule, as clerk, agent. or servant of the "New Era Club," would, under the proof in this case, be liable as principal under the statute, but they insist that he should have been informed against as such agent, clerk, or servant.    We do not think so.    The respondent is found, at a place of business, engaged in the sale of liquors at retail, without having paid the tax.    In his defense he shows that he is so selling as agent, clerk, or servant of a corporation which has not paid the tax or complied with the statute.    By his own showing, under section 24, he makes himself liable as a principal, and the information is good against him as laid.

The conviction was proper, and the court below is directed to proceed to judgment thereon.

The other Justices concurred.