BARDEN, COUNTY TREASURER, RESPONDENT, *v.* THE MONTANA CLUB, APPELLANT.

LICENSES—*Retail liquor dealer—Social clubs.*—A social club, incorporated for literary, educational, and social purposes, and for mutual improvement and benefit, maintaining a library and keeping a stock of liquors for the exclusive use of members and their guests, which are served at fixed prices by salaried employees, without profit, members being responsible for the bar bills of their guests, is not a retail liquor seller within the purview of the Montana license law, section 1346, fifth division of the Compiled Statutes.

SUPREME COURT—*Practice.*—This court cannot review the evidence produced at the trial below for the purpose of finding the facts and directing a proper judgment to be entered thereon. (*Barkley* v. *Tieleke,* 2 Mont. 435; *Chumasero* v. *Vial,* 3 Mont. 376, cited.)

*Appeal from First Judicial District, Lewis and Clarke County.*

Judgment was rendered for plaintiff below by MILBURN, J., sitting in place of HUNT, J.

*Bach & Buck,* for Appellant.

The license acts of Montana (ch. 81, p. 1017, Comp. Stats. and the acts amendatory thereof, Extra Sess. 15th Leg. Assembly, p. 72) contemplate the collection of license taxes from persons or corporations engaged in business.   Section 6, act of Extra Session, *supra,* expressly mentions "the transaction of business."   Chapter 81 throughout, that is to say, in a number of its sections (§§ 1341–1345 inclusive, 1349, 1356, 1357, 1361, 1362, 1365, and particularly § 1366), indicates that only a business or occupation is liable to the payment of a license tax.   Such is a proper construction for said acts construing all the sections thereof together. (*Ex parte Bernert,* 62 Cal. 532.)   Said acts, if they attempted to impose a license upon persons or corporations not engaged in business, would violate section 1 of article xii. of the Constitution of Montana.

Said acts of the legislature and said section of the Constitution use the word "business" as defined by Webster in the second definition thereof contained in his dictionary — "any particular occupation or employment for a livelihood or gain." (*Ex parte Bernert,* 62 Cal. 532; *Warren* v. *Shook,* 1 Otto [U. S.], 711; *Moore* v. *State,* 16 Ala. 413; 2 Am. & Eng. Encycl. of Law, p. 699, and cases cited.)

If the finding of the lower court, that the disposal of liquors by the club to its members was at a profit, was true, according to the English authorities the appellant would not be liable. (*Graff* v. *Evans,* 22 Am. Law Reg. N. S. 99.) There is apparently some conflict in the decisions as to the liability of social clubs for liquor licenses. Those, however, which hold that they are liable, have, as a rule, been rendered in cases where saloon-keepers have sought to evade the law by adopting the guise of social clubs for their traffic in liquors. The weight of authority is against their liability. (*Tennessee Club* v. *Dwyer,* 1 Am. & Eng. Corp. Cas. 458; *Seim* v. *State,* 55 Md. 566; 39 Am. Rep. 496; *Graff* v. *Evans,* 22 Am. Law Reg. N. S. 99; *Commonw.* v. *Smith,* 102 Mass. 144; *Commonw.* v. *Pomphret,* 137 Mass. 564; 50 Am. Rep. 340; *Commonw.* v. *Ewig,* 145 Mass. 119; *Commonw.* v. *Geary,* 146 Mass. 139.)

*Henri J. Haskell,* Attorney-General, and *C. B. Nolan,* County Attorney, for Respondent.

The unquestioned weight of authority is that a disposal of liquors by a social club through its agents to the members thereof at a price fixed and determined by the club, or a board of managers, constitutes a sale, and possesses all the ingredients and elements necessary to constitute a sale. (*Territory* v. *Farnsworth,* 5 Mont. 303; *State* v. *Eastern etc. Club* and *State* v. *Farmers' etc. Club,* 72 Md. 297; Newmark on Sales, § 1, and notes; *Chesapeake Club* v. *State,* 63 Md. 446.) The disposal of liquors by a social club to its members, although the articles of incorporation specify the purposes of its institution, and the sale of liquors is not therein enumerated, under the decision of the territorial Supreme Court in the case of *Territory* v. *Harris,* 8 Mont. 140, renders it liable for the payment of the license

required by law. (See, also, *Territory* v. *Farnsworth*, 5 Mont. 303.) The overwhelming weight of authority is to the effect that social clubs are subject to license laws and amenable to their provisions. (*Rickart* v. *People*, 79 Ill. 85; *Martin* v. *State*, 59 Ala. 34; *United States* v. *Wiltig*, 2 Low. 466; *Marmont* v. *State*, 48 Ind. 21; *State* v. *Lockyear*, 95 N. C. 633; 59 Am. Rep. 287; *State* v. *Mercer*, 32 Iowa, 405; *People* v. *Andrews*, 115 N. Y. 427; *State* v. *Essex Club*, New Jersey, Nov. 17, 1890; *State* v. *Horacek*, 41 Kan. 87.)

BLAKE, C. J.— This is an appeal from a judgment which was entered against the Montana Club, for the recovery of a license tax under the following statute: "All persons who deal in, sell, or dispose of, directly or indirectly, any spirituous, alcoholic, vinous, or malt liquors in any quantity less than one quart, shall, before the transaction of such business, obtain a license, for which he or they shall pay as follows:" (Stats. 15th Extra Sess. 74.)

The Montana Club was incorporated under the laws of the Territory, and the articles contain the following certificate: "The particular business or objects for which the association is formed are as follows, to wit, for literary, educational, and social purposes, and for mutual improvement and benefit, and to maintain in the said city of Helena, in said county and Territory, apartments fitted with the proper fixtures, and furnished with the proper furniture and appurtenances, to be used for said purposes by ourselves, and our associates and successors, and to do each and every other act and thing necessary and convenient for the maintenance and perpetuation of a social club in said city of Helena." The articles bear the date of March 23, 1885.

The transcript contains an admission in these words: "It was also admitted by the counsel for the State that the membership is about two hundred and twenty-five; that members pay their annual dues, in the case of resident members, forty dollars a year, and in case of non-resident members, twenty dollars a year, and an initiation fee of one hundred dollars; that the club pays a rental for its rooms of one hundred dollars a month; and it employs a steward at a salary of one hundred

dollars a month; employs a bar-keeper, a man who takes charge of what is called the bar of the club, at one hundred dollars a month, and three other employees at salaries of about seventy-five dollars a month each." It is also conceded by counsel that the club has a library and magazines and newspapers for the use of the members; that persons who do not reside in the city of Helena can be admitted to the privileges of the corporation for the period of ten days upon the receipt of a card from a member; that the invited guests and members can obtain at the bar of the club all the liquors which are mentioned in the statute *supra,* upon a compliance with the rules; and the member who introduces a visitor is responsible for the indebtedness which may be incurred thereby, although the latter is primarily liable. It is further shown that the daily receipts from the disposal of the liquors by the club amounted to forty dollars.

The following among other findings were made by the court below: "That on the first day of April, A. D. 1890, at Helena, said county and State, the defendant corporation, through its agents, did sell and dispose of spirituous, vinous, and malt liquors in quantities less than a quart to its members, permanent and temporary, and continues so to do, and has made sales of liquors as aforesaid to persons from abroad, who, according to the rules of the club, had secured a temporary or provisional membership. . . . . That the liquors disposed of by said defendant corporation were the property of said corporation, and were purchased by said corporation with corporate funds. . . . . That said liquors were disposed of at a profit by said club."

The conclusions of law were stated as follows: "(1) That the disposal of liquors by the club to its members, permanent and temporary, constitutes a sale of said liquors. (2) That the sale of liquors by the club to its members constitutes a business, for the carrying on of which the club is liable for the payment of a license." The fourth specification of errors is that "there is no evidence to show, or to justify the finding of fact by the court that the defendant has ever disposed of liquors of any kind at a profit." An examination of the testimony compels us to sustain this proposition. Four witnesses were called for the State and testified upon this point. Three of

them were officers of the club, and stated positively that there was no profit in the sales of the liquors at the bar, and that a committee adjusted the prices for the sole purpose of paying the expenses thereof, including the purchases. Another person testified: "Of my own personal knowledge I don't know of any profit made there to-day." The foregoing finding must be set aside and disregarded in reviewing the legal questions which are before us.

The authorities which discuss the problems to be solved in this case cannot be reconciled. Some of the decisions which have been cited relate to associations that have been organized for the purpose of evading and violating the law restraining the sale of intoxicating liquors. They are inapplicable to the present inquiry, for no charge of this nature has been uttered against the appellant. Such is *State* v. *Mercer*, 32 Iowa, 405. In the opinion of the court, Mr. Justice Beck referred to the articles of association of the "Winterset Social Club," and said: "They appear, by the statement of counsel, to have been nothing more than the foundation of an organization, the object and intent of which was to evade the law for the suppression of intemperance, a rather clumsy device by which the defendant and the members of the 'social club' hoped to defeat that law and establish a place of resort where they could be supplied with intoxicating liquors for unlawful use. The fact that, under the arrangement of selling tickets, the members of the club became the owners of the liquors to the extent of the money paid, does not make the sale of the liquors in that way lawful." The statute, which was interpreted by the court, formed a part of what is generally designated as a prohibitory liquor law, and did not relate to any system of taxation. The case of *Marmont* v. *State*, 48 Ind. 21, belongs to the same class, and the opinion says that "the appellant was indicted, tried, and convicted, in the court below, for selling intoxicating liquors on Sunday, and permitting them to be drunk upon the premises." Chief Justice Buskirk in the opinion gives at length the statement of facts concerning "The Modock Club," and proceeds: "It is agreed that each member, upon his initiation, pays fifty cents, and thereafter a monthly assessment of ten cents, to form the basis of a fund for payment of expenses and reliefs

of the society; and that the money received for each glass of beer drawn for and used by a member of said association goes into the society's treasury, to keep up its funds for payment of expenses, procuring refreshments, and for reliefs; which expenses are for fuel, rents of hall, newspapers, the beer used, and the donations or reliefs payable to each member of said association, who, from sickness or other mishaps, may require assistance; and a standing committee from the members of said society is appointed to see after and inquire into and direct the payment of necessary reliefs in all such cases. . . . . When the society appointed the appellant its agent for the sale of its beer to the members of the association, it consented that each member might become the owner of such portion of the partnership property as he might be willing to pay for, and appropriate it to his individual use. If the transaction set out in the agreed statement of facts be not an evasion and violation of the law, then a number of persons may do that lawfully which if done by one person would be unlawful. It would be a reproach to the law and its administration, if a combination of persons could, by such an arrangement, evade the law and thwart the legislative will." To the same effect are *Rickart* v. *People*, 79 Ill. 85; *State* v. *Horacek*, 41 Kan. 87; *State* v. *Lockyear*, 95 N. C. 633; 59 Am. Rep. 287. It should be observed that these citations support the contention of the respondent that the transaction, which is described in the case at bar, possessed the elements of a sale. It must be further admitted that the following authorities are directly in point and uphold the ruling of the court below: *United States* v. *Wittig*, 2 Low. 466; *Martin* v. *State*, 59 Ala. 34; *People* v. *Andrews*, 115 N. Y. 427; *People* v. *Soule*, 74 Mich. 250; *Chesapeake Club* v. *State*, 63 Md. 446; *State* v. *Essex Club*, New Jersey, Nov. 17, 1890.) They assert generally that the property which belonged to the corporation or club has been transferred for a valuable consideration to persons who have received it; that the intention or good faith of the members who authorized such acts is immaterial; and that the law contemplates that the license shall be paid for the disposal of liquors in this manner. The opinions in some of these cases are elaborate essays upon the question under consideration, and their conclusions have been fairly announced. We do not deny

their weight, and will not attempt to refute the reasons upon which they are founded, and will go further, and say that the controversy is surrounded by uncertainty.

There are, however, well considered cases in which a contrary view has been expressed. (*Graff* v. *Evans*, 8 Q. B. D. 373; *Tennessee Club* v. *Dwyer*, 11 Lea, 452; 47 Am. Rep. 298; *Seim* v. *State*, 55 Md. 566; 39 Am. Rep. 496; *Commonw.* v. *Smith*, 102 Mass. 144; *Commonw.* v. *Pomphret*, 137 Mass. 564; 50 Am. Rep. 340; *Commonw.* v. *Ewig*, 145 Mass. 119.) In *Graff* v. *Evans, supra*, Mr. Justice Field said: "In construing a statute like the present, by which a penalty is imposed, we must look strictly at the language in order to see whether the person against whom the penalty is sought to be enforced has committed an offense within the section. It is not disputed that the club was *bona fide* a club. . . . . I think the true construction of the rule is that the members were the joint owners of the general property in all the goods of the club, and that the trustees were their agents with respect to the general property in the goods, although they had other agents with respect to special properties in some of the goods. I am unable to follow the reasoning of the learned magistrate in saying that the question depends upon whether or not a profit was made upon the sale of the liquors. . . . . The section must be construed by looking at the language used, and taking a large view of the object of the legislation. The legislature have come to the conclusion that it is unadvisable that intoxicating liquors should be sold anywhere without a license. The enactment is limited to 'sales' of intoxicating liquors, and only seems aimed at sales by retail traders, because the wholesale trader is not touched. The question here is, did Graff, the manager, who supplied the liquors to Foster, effect a 'sale' by retail? I think not. I think Foster was an owner of the property, together with all the other members of the club. Any member was entitled to obtain the goods on payment of the price. A sale involves the element of a bargain. There was no bargain here, nor any contract with Graff with respect to the goods. Foster was acting upon his rights as a member of the club, not by reason of any new contract, but under his old contract of association by which he subscribed a sum to the funds of the club, and became entitled to

have ale and whiskey supplied to him as a member at a certain price. . . . . There was no contract between two persons, because Foster was vendor as well as buyer. . . . . I think it was a transfer of a special property in the goods to Foster, which was not a sale within the meaning of the section." Mr. Justice Huddleston concurred and said: " It seems to me clear that Foster had a property or at least an interest in the goods which were transferred to him. Mr. Hill rightly designated that interest as a one eleven-hundredth share. Foster on payment got from the bar-man who served him the interest of the other one thousand and ninety-nine members who thereby transferred their interest to him. There was no transfer of the general or absolute property in the goods to Foster, but a transfer of a special interest. That, in my view, was the result of the transaction. I cannot think it was a sale of intoxicating liquors by retail."

In *Seim* v. *State, supra*, Chief Justice Bartol for the court said: " It will be observed that the license laws (Code, art. 57), which forbid the sale or barter of spirituous or fermented liquors without a license, have never been construed as applicable to *social clubs*, of which there are several in Baltimore City, where liquors are procured for the use of the members, and are furnished to them in the manner described in the present case; and we think it very clear that no license is required, for the reason that such a transaction is not a *sale* within the meaning of the license laws. And by a parity of reason, we conclude that the members of such associations as 'The Concordia' is admitted to be, who obtain refreshments and liquors at the club, by paying into the common fund the price fixed by the regulation of the society, cannot be said in any sense to buy them from the corporation, nor can the corporation be said to *sell* them to the members, within the meaning of the Act of 1866. . . . . The society is not an ordinary corporation; but a voluntary association or club united for social purposes — each member must be elected, and each is joint owner of the property and assets, and entitled to the privileges of the society as long as he remains a member. Among these privileges is that of partaking of the provisions and refreshments provided for the use of the members. These are not *sold* to him by the

corporation, but furnished to him by the steward, upon his paying into the common fund what is equivalent to the cost of the article furnished, and what is so paid is expended in keeping up the supply for the use of the members. Such a transaction is not a barter or sale in the way of trade, and therefore not within the purview or meaning of the Act of 1866." In *Chesapeake Club* v. *State, supra,* the doctrine of *Seim* v. *State, supra,* was recognized but held inapplicable, and the court said: "The language of the Sunday law of 1866, under which the case of *Seim* v. *The State* was decided, is altogether different from that of the Act of 1882, chapter 112; and the decision in that case would seem to have been in the mind of the framers of the Act of 1882, chapter 112; for by the latter act terms are employed more comprehensive, especially those making the act applicable to associations and corporations, than are to be found in the Sunday law of 1866."

A comparison of the statutes of the State of Maryland, which are referred to in *Seim* v. *State, supra,* and *Chesapeake Club* v. *State, supra,* illustrates clearly the distinctions which have been pointed out. In the first case, the court construed an act providing that "no person in this State shall sell, dispose of, barter, or if a dealer in any one or more of the articles of merchandise in this section mentioned, shall give away, on the Sabbath day, . . . . any . . . . spirituous or fermented liquors . . . ." In the last case, the court interpreted a statute embodying these clauses: "If any person or persons, house, company, corporation or association, or body corporate, shall sell, directly or indirectly, at any place, or give away at his, her, their, or its place of business, any spirituous or fermented liquors . . . ." And "in case of any violation of any provisions of this act by any company, corporation, or association, each or any member of such company, corporation, or association, shall be liable, and shall suffer imprisonment . . . ." In *People* v. *Soule, supra,* this statute was under consideration: "All saloons, restaurants, bars in taverns, or elsewhere, and all other places, except drug stores, where any of the liquors mentioned in this act are sold or kept for sale . . . ." In *Commonw.* v. *Pomphret, supra,* the court cites *Commonw.* v. *Smith, supra,* and the statutes in force when the decision was

made, and Mr. Justice Field says in the opinion: "Nothing is contained in that act, or in any subsequent acts, which, in terms, relates to clubs, until the statute of 1881, chapter 226, was passed. . . . . The intention of this statute, however, plainly is to distinguish between clubs in those cities and towns whose inhabitants vote to grant licenses, and clubs in those whose inhabitants vote not to grant licenses, and unlicensed clubs in the former cities and towns are left to be dealt with under other statutes." The statute of 1881 which is mentioned in the opinion uses this language: "In any city or town in which the inhabitants vote . . . . that licenses shall not be granted, all buildings or places therein used by clubs for the purpose of selling, distributing, or dispensing intoxicating liquor to their members or others shall be deemed common nuisances; and whoever keeps or maintain, or assists in keeping or maintaining, such a common nuisance, shall be punished . . . ." The court in *Commonw.* v. *Pomphret, supra,* stated: "It must be assumed that the decision in *Commonw.* v. *Smith* was known to the legislature at the time the existing statutes were passed. The inference is, that the legislature intended that unlicensed clubs in cities and towns whose inhabitants vote to grant licenses must be dealt with according to the construction given by this court to statutory provisions similar to those in existing statutes prohibiting the sale, or exposing or keeping for sale, of intoxicating liquors."

The amendments which have been incorporated in the laws concerning licenses are instructive. The Revised Statutes provided for the payment of certain sums by "any person or persons who shall keep any house, or saloon, or room, where any banking game or other game of chance is dealt or played for money. . . . ." (Rev. Stats. 5th div. § 805.) This section was amended to read: "Any person or persons, or association of persons, who shall keep any house or saloon, or room or club-rooms where any banking game or other game of chance is dealt or played for money. . . . ." (Stats. 13th Sess. 47.) The last provisions and the act under which judgment was entered against the appellant are found in the Compiled Statutes, fifth division, sections 1346 and 1350. In 1887 these sections were amended in some respects, but the peculiar phraseology which has

been specified was retained. (Stats. 13th Extra Sess. 74, 75.) The decisions involving the liability of the appellant to pay the license under our statute are contradictory, but a slight modification by the legislative power would decide plainly and finally the question. There is no room for construing the act relating to gambling games. When these distinctions are 'so carefully preserved it is a reasonable inference that the legislature did not designate the business of the appellant in framing the law defining licenses.

The court below erred in its findings and conclusions that the Montana Club at the times set forth in the complaint made sales of intoxicating liquors. This court cannot review the evidence in the transcript and find the facts and order judgment to be entered accordingly. (*Barkley* v. *Tieleke*, 2 Mont. 435; *Chumasero* v. *Vial*, 3 Mont. 376.)

It is therefore ordered and adjudged that the judgment be reversed with costs, and that the order overruling the motion for a new trial be reversed, and that the cause be remanded for a new trial.

HARWOOD, J., and DE WITT, J., concur.