THE PEOPLE *ex rel.* J. S. Stevenson *et al.*

*v.*

THE LAW AND ORDER CLUB.

*Opinion filed June 16, 1903.*

1. DRAM-SHOPS—*Dram-shop act covers all devices used in lieu of direct sales.* The Dram-shop act, which declares the sale of intoxicating liquors without a license to be criminal, applies to all persons, natural or artificial, and covers any kind of device used in lieu of a direct sale.

2. SAME—*social club cannot furnish liquor to members without having a license.* The dispensing of intoxicating liquors by a social club to its members without having a license is in violation of the Dram-shop act, notwithstanding the liquor is furnished to members only, at actual cost and expense of serving, and upon tickets representing the amount of the member's "assessment" by the club.

3. SAME—*purpose for which club was organized is immaterial.* The fact that a club was organized in good faith for social or benevolent purposes, and not as a shift or device to evade the provisions of the Dram-shop act, is not material, if the business of the club as carried on is, in effect, a violation of the statute.

WRIT OF ERROR to the Circuit Court of Randolph county; the Hon. WILLIAM HARTZELL, Judge, presiding.

. This was an information in the nature of a *quo warranto,* filed, by leave of the court, in the circuit court of Randolph county by the State's attorney, requiring the defendant in error, the Law and Order Club, to show cause why its charter should not be revoked for mis-user. The court was informed that the defendant in error was incorporated on the 20th of May, 1902, under the law of the State of Illinois pertaining to corporations not for pecuniary profit; that its object, as stated in its certificate, is for the mutual development and advancement of the social, literary and benevolent character of its members, but that the corporation was in fact conducting a dram-shop without a license; that it has fitted up a room, known as the "annex" to the Randolph Hotel, in the city of Sparta, with all the fixtures and appurtenances of a

dram-shop, and constantly keeps on hand intoxicating liquors; that it issues checks or assessment tickets to its members, entitling them to the amount of liquors equaling the amount in value of the money paid for the tickets or checks, which can be bought for cash of the bar-keeper and can be used to purchase liquors at any time in any quantity desired; that only a nominal admission fee of twenty-five cents and monthly dues of ten cents are charged, which are the only sources of income the club has, outside of its sales of liquors; that its trustees and managers are three former saloon-keepers, whose licenses expired shortly before the incorporation of the club; that it has taken out a United States liquor dealer's license, but has never had a dram-shop license under the laws of Illinois; that the sole object of the corporation is to furnish intoxicating liquors to its members conveniently, without paying the license required of dram-shop keepers.

The defendant in error, in its plea to the information, stated and admitted many of the facts we have set out above, contained in the information, but denied that it conducted a dram-shop and that it was organized for the purpose alleged in the information. The plea sets out the constitution and by-laws of the club in full. They provide, among other things, that any male person of sound mind, above the age of twenty-one years, not an habitual drunkard, shall be eligible to membership, and that the applicant shall be elected by ballot, two or more black balls being sufficient to reject. It avers that the revenues of the club are derived from an initiation fee of twenty-five cents, monthly dues of ten cents and from special assessments, which assessments "may be levied by any officer of the club, at the suggestion of any member, upon himself, at any time, in such amounts as may be mutually agreeable, provided that no sum less than one dollar shall be levied at any time; and such sums paid, together with the initiation fees and monthly

dues, shall be subject to the disbursal of the officers of
the club, whose duties it shall be to provide out of said
fund the club rooms, light, heat, books, periodicals, pa-
pers, refreshments and all other expenses, including the
salary of the officers, and the residue, if any, shall be
turned into the funds of the club;" that the officers shall
be a president, a vice-president and a secretary-treas-
urer, who constitute the board of managers and have full
control of the affairs of the club, and shall receive each
a salary not to exceed $50 per month.   It shall be the
duty of the officers to furnish the members with suitable
club rooms, and provide books, magazines, periodicals,
daily papers and refreshments out of the funds of the
club.  A member may be expelled for drunkenness, abuse
or neglect of his family, profane and insulting language
to a member and violation of the constitution and by-
laws.  A quorum for business is constituted of the presi-
dent, secretary and three members.   The plea further
avers that the club has always kept cigars, bottled beer
and intoxicating liquors, but has never kept any keg
beer; that it has never sold or given away anything to
anybody, but has dispensed and furnished its goods to
its members by the drink or bottle, to be drank in the
club room; that the members paid nothing whatever for
their drinks, except the actual cost of the same and cost
of serving; that the liquors, beers and cigars are paid
for by special assessment, for which the party paying
gets a receipt for the amount of refreshments to the ex-
tent of said assessment; that no money whatever is paid
at the bar; that the main object of the club is to obtain
and enjoy a place of comfort and friendly intercourse for
its members, and that the furnishing of liquors is merely
incidental to the main object of the club; that it has a
library, magazines, periodicals and daily papers; that it
occupies one room, one hundred feet long by twenty-six
wide, which is divided into three rooms or subdivisions,
viz., the ante-room, the reading room and the entertain-

ment room, in which last room the social and literary exercises are held, luncheon and refreshments served and where the library is kept.

The People demurred to the plea, and the demurrer being overruled by the court, they elected to abide by their demurrer. The information was dismissed by the court, and the People have prosecuted this writ of error to reverse the judgment.

A. E. Crisler, and H. Clay Horner, for plaintiffs in error.

M. W. Borders, for defendant in error.

Mr. Justice Carter delivered the opinion of the court:

The only question presented by this record is whether the facts set up in the plea, considered according to their legal effect, are sufficient to justify the defendant in error in using its corporate powers in dispensing and furnishing intoxicating liquors to its members without first having taken out a dram-shop license according to the statutes of this State. The contention of the corporation is, that a *bona fide* club can dispense liquors to its members as incidental, merely, to its organization, without taking out a dram-shop license. Many cases from other jurisdictions are cited, holding this doctrine. The plaintiffs in error cite a large number of cases holding the contrary doctrine. The authorities seem to be in hopeless conflict on the subject. However, the statute of this State must govern the case.

The Dram-shop act, (Hurd's Stat. 1901, p. 750,) in section 1, defines a dram-shop to be "a *place* where spirituous or vinous or malt liquors are retailed by less quantity than one gallon," and declares these liquors to be intoxicating liquors within the meaning of the act. Section 2 provides that "whoever, not having a license to keep a dram-shop, shall, by himself or another, either as princi-

pal, clerk or servant, directly or indirectly, sell any intoxicating liquor in any less quantity than one gallon * * * shall be fined," etc. Section 7 provides that "all *places* where intoxicating liquors are sold in violation of this act, shall be taken, held and be declared to be common nuisances, and all rooms, taverns, eating houses, bazars, * * * or other places of public resort, where intoxicating liquors are sold in violation of this act, shall be deemed public nuisances." Section 13 provides that "the giving away of intoxicating liquors, or other shift or device to evade the provisions of this act, shall be held to be an unlawful selling." Other sections provide for the granting of licenses, etc.

Under the general laws of the State no person has the legal right to sell spirituous liquors without a license, and by doing so a fine is incurred, which may be collected by indictment or suit. (*Kadgihn* v. *City of Bloomington*, 58 Ill. 229.) The Dram-shop act, which took the place of similar legislation which has long been on our statute books, declares the business of selling intoxicating liquors in quantities less than one gallon to be criminal, except so far as it is expressly authorized and made lawful by license. (*People* v. *Cregier*, 138 Ill. 401.) The language of the statute is certainly comprehensive enough to include any person, natural or artificial, and any kind of a sale or device used in lieu of a sale direct. Under similar statutes much ingenuity has been expended in attempting to show that the dispensing or furnishing of liquors to members of a club by an agent of the club was not a sale, but a mere transfer of the special property of the other members to him; (*Graff* v. *Evans*, 8 Q. B. Div. 373;) was in fact only an equitable and convenient mode of distributing refreshments to its members; (*Tennessee Club* v. *Dwyer*, 11 Lea, 452;) was a delivery to the member of his part of the liquors owned by the club; (*State* v. *McMaster*, 35 S. C. 1;) was but a distribution among the members of the club of the property that belonged to

them; (*People* v. *Adelphi Club*, 149 N. Y. 5;) was a mere division, among the members, of the common stock of liquors according to a previously arranged system. (*Commonwealth* v. *Smith*, 102 Mass. 144.) We do not concur in these views, and having regard for the provisions of the statute of this State regulating the sale of intoxicating liquors, they cannot be allowed to control cases of this character.    A sale is a transmutation of property from one man to another in consideration of some price or recompense in value. (2 Blackstone's Com. 446.) It is a transfer of the absolute or general property in a thing for a price in money. (Benjamin on Sales, sec. 1.) A sale is the passing of the title and possession of any property for money which the buyer pays or promises to pay. (*Kranvek* v. *State*, 38 Tex. Cr. 44.) The word "sell" has a well known legal signification, and in the absence of anything to the contrary appearing in the statute, we must assume that it is here intended to have that signification. *Siegel* v. *People*, 106 Ill. 89.

The corporation or club, being the owner of the liquor, through its appointed agent delivers it to the member of the club on his request and receives a fixed compensation in money therefor.    The property in the liquor passes to and becomes vested in the individual member, and the money paid is received for and becomes the property of the corporation.    (*State* v. *Social Club*, 73 Md. 98.) If an agent is appointed by several tenants in common to dispose of real or personal property, and he does dispose of any part thereof in exchange for money, it is none the less a sale because the party paying the money and receiving such part to his own use happens to be one of the tenants in common. (*State* v. *Neis*, 108 N. C. 787.) The liquor is not the property of the member before it is separated from the common mass and delivered to him under his promise to pay for it, but the property of the company.    It is not the property of the member until after the delivery and appropriation of it by him to his own

use.  If he should clandestinely enter the club house at night and regale himself with the liquors of the club it would not be a defense to an indictment for the offense to prove that he was a member of the corporation owning the property.  Such specious defenses have received no countenance except in prosecutions for the illegal sale of ardent spirits.  (*State* v. *Essex Club*, 53 N. J. L. 99.)  It has been said that while the beer was in the keg it was the common property of the society, but when a portion was withdrawn and delivered to a member of the society, upon credit or for cash, the portion so withdrawn ceased to belong to the society and became the separate property of the member receiving it, and the transaction invested him with the power to drink it himself, to give it away, to sell it or to throw it away.  *Marmont* v. *State*, 48 Ind. 21.

But it is not necessary to consider further the decisions of other States.  This court has spoken on this subject in *Rickart* v. *People*, 79 Ill. 85.  In speaking of the contention there made that the ticket-holders or parties constituting the association owned the liquors, we said (p. 90): "In that view the liquors would belong to the company as partnership stock, and the company would have no more rightful authority to sell to the individual members or partners at retail, without a license to keep a dram-shop, than a mere stranger would have.  Buying tickets, as we have seen, [as in the case at bar, levying a special assessment and getting checks therefor,] was simply buying twenty drinks and paying for them in advance.  Each one paid for whatever he got, as he would have done had he bought of a licensed seller.  It is preposterous to assume that a number of persons may, with impunity, associate themselves together as a firm or voluntary company, purchase a quantity of liquors and retail them out to the several members as they would to strangers.  Such an enterprise is unlawful and all concerned would be guilty of violating the statute.  If such

a device could be tolerated it would render all legisla-
tion on this subject nugatory." This reasoning applies
with equal cogency to a corporation. As said in *State* v.
*Shumate*, 44 W. Va. 490: "Whatever may be the decisions
and practice in other States, our statute is so broad as
to allow no shift or device to defeat the purpose of its
enactment. It plainly forbids the selling   *   *   *   by
one person to another of the forbidden intoxicants, with-
out a license; it matters not for what purpose,—literary,
social or otherwise. To decide to the contrary would be
to turn every saloon into a literary, social or musical
club, to the entire destruction of the peace and good
order of society and the nullification of all prohibitory
and revenue legislation."

Much is said in the argument about the question
whether the corporation was organized in good faith for
literary, social and benevolent purposes, or was a mere
"shift or device" to carry on a dram-shop without a li-
cense, and thus to avoid the statute. The demurrer ad-
mits, of course, all the facts well pleaded but does not
admit the mere conclusions of the pleader, and it is ap-
parent from the pleadings that the corporation is engaged
in selling intoxicating liquors in less quantities than one
gallon without license. The mere fact that such liquors
are sold to its members and for a price sufficient, only,
to pay their cost and the cost of serving them, can, under
the statute, make no difference. As we have seen, liquors
so dispensed are sold, within the meaning of our stat-
ute, and such sales without license are a violation of the
Dram-shop act. In this view of the case it is immaterial
whether or not the organization and management of this
corporate club are a mere "shift and device" to evade the
statute. In either case the statute is violated.

It may be said, however, that very strong inferences
arise from the facts alleged in the information and not
denied by the plea, and from the facts averred in the
plea, that one of the leading objects of the formation

of the club was to furnish a place and opportunities for the dispensing of intoxicating liquors, without complying with the statute, to a large class of persons desiring and who could obtain them by paying a nominal initiation fee and becoming members. No male person not a minor, a lunatic or habitual drunkard was excluded by the constitution and by-laws from membership. Such excluded persons are usually excluded from dram-shops. No real or substantial provision was made for the support of the club and to pay the salaries of the officers or attendants, except from the sales of liquors and cigars to the members. So far as we can determine from the averments of the plea, the member desiring to obtain liquor or beer suggested to the officer of the club in attendance that he, the member, should be specially assessed, whereupon such officer levied an assessment upon him in such an amount as was "mutually agreeable," not less than one dollar, and (as alleged in the information and not denied by the plea) tickets were issued to such member, for which he paid the amount assessed and then used them in procuring such liquors. While it may be true that in the formation of the club other and laudable purposes were intended to be subserved, still we cannot avoid the conclusion reached from a careful consideration of the facts admitted by the pleadings, that one of the controlling purposes of the corporation was the purchasing and dispensing to its members of intoxicating liquors without having obtained a license to keep a dram-shop,—and this, as we hold the law to be, is a violation of the statute. It follows that the court below erred in overruling the demurrer to the plea.

The judgment will be reversed and the cause remanded, with directions to sustain the demurrer, and for such further proceedings as to law and justice may appertain.                    *Reversed and remanded.*