The People v. Craig, 155 Ill. App. 73.

---

### The People of the State of Illinois, Defendant in Error, v. John Craig, Plaintiff in Error.

DRAM-SHOPS—*what selling of intoxicating liquor in anti-saloon territory.* *Held,* under the evidence, that the so-called "club" provided with lockers for members, etc., was but an evasion of the statute and designed as a means to enable the selling of intoxicating liquor in anti-saloon territory.

Prosecution for unlawful sale of intoxicating liquor. Error to the Circuit Court of Edgar county; the Hon. O. P. THOMPSON, Judge, presiding. Heard in this court at the November term, 1909. Affirmed. Opinion filed March 30, 1910.

F. C. VAN SELLAR, for plaintiff in error.

RICHARD S. DYAS, for defendant in error; FRANK E. SHOPP, of counsel.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

Plaintiff in error, John Craig, was indicted by the grand jury of Edgar county for selling intoxicating liquor in anti-saloon territory. A jury was waived and upon a trial by the court Craig was found guilty under one count of the indictment, fined $20 and costs, and ordered committed until the same was paid.

The evidence discloses that the town of Paris is anti-saloon territory; that before it became such, Craig was employed as a bar tender in a saloon in the city of Paris; that upon the town of Paris becoming anti-saloon territory, he organized and had incorporated "The Paris Club," of which he became secretary and treasurer. The headquarters of the club were located in a room in the second story of a brick building in the city of Paris. The first floor was occupied by one Heizar as a restaurant, from the rear of which access was had to the club room by a stairway. Keys to the door of the stairway, which was kept locked, were held by Craig, one Diehl and his assistant, and several members. The furniture of the club room consisted of a few chairs and tables, a punching bag, water cooler and ice box, and about 80 lockers built around the wall. The ice box, in which beer and whiskey in bottles were stored, was kept locked, the keys being carried by Craig and Diehl only. Each member had a locker in which he kept liquor and to which he carried the key, Craig having duplicate keys. When a member desired to purchase liquor, he paid Craig $2.75 for a case of beer, or $1.25 for a quart of whiskey, and signed a printed order supplied by Craig in blank, upon the Evansville Brewing Association for the beer, or upon an Indian-

apolis liquor house for the whiskey. The order was then forwarded by Craig, and when the liquor arrived at the club room he placed it in the locker of the member ordering and paying for the same, attaching to the bottles for the purpose of showing ownership, numbered metal tags.

The evidence further shows that one Frazier, on March 15, 1909, paid Craig $1 for the use of a locker, and $2 membership fee, and then signed an order for a case of beer, which order he delivered to Craig; that he afterward found the beer in his locker and that he thereafter ordered beer four times, in the same manner. Other witnesses testified to obtaining whiskey and beer in the same way. Neither of them knew the name of the establishment from which the liquor was ordered, and did not know of its arrival until he found it in his locker. The evidence also shows that Craig made all purchases, and paid all bills, but does not show that he kept any account with the club, of his financial transactions. The only question presented by the record is whether plaintiff in error was under the circumstances detailed, guilty of a violation of the anti-saloon territory act, section 13 of which provides that "The giving away or delivering of any intoxicating liquor for the purpose of evading any provision of this act, or the taking of orders or the making of agreements, at or within any political subdivision or district, while the same is anti-saloon territory, for the sale or delivery of any intoxicating liquor, or other shift or device to evade any provision of this act, shall be held to be an unlawful selling." Rev. Stat. 1908, 896.

It seems too clear to necessitate discussion or argument, that the furnishing and disposing of liquor by plaintiff in error in the manner above described, constituted a shift or device to evade the provisions of the statute above quoted. State v. Social Club, 73 Md. 98; State v. Boston Club, 45 La. Ann. 585; Newark v.

Essex Club, 53 N. J. L. 99; Kentucky Club v. Louisville, 92 Ky. 309; People v. Soule, 74 Mich. 250; Com. v. Baker, 152 Mass. 337.

The surrounding circumstances and conditions in evidence can lead to but one logical or reasonable conclusion; that is, that the real and sole object of the so-called club was to enable its members to purchase and plaintiff in error to sell intoxicating liquors, in small quantities, his profit being the difference between the total amount paid to him by members for the purchase of liquors, for membership fees and locker rent, and the sums paid by him for liquors and the expenses of maintaining the room. The fact that it does not appear that a direct profit accrued to plaintiff in error for dispensing the liquor, or that the transaction may be merely incidental to the main purpose of the club, or that only members enjoyed the right to so procure liquors, does not render the transaction any the less a sale. This view we think is warranted and supported by the following authorities: Rickart v. The People, 79 Ill. 85; The People ex. rel. v. Law and Order Club, 203 Ill. 127; South Shore Club v. The People, 228 Ill. 75.

It follows that plaintiff in error was guilty of the offense charged in the indictment, and the judgment of the circuit court is accordingly affirmed.

*Affirmed.*