## The People of the State of Illinois, Defendant in Error, v. Henry Gardt, Plaintiff in Error.

### Gen. No. 5,618.

1. DRAMSHOPS—*evidence.* Findings of violations of the Dramshop Act and the Anti-Saloon Act by a club, its officers, agents and servants, are warranted where the evidence tends to show direct sales of liquor in anti-saloon territory, and that though the club purported to be organized for social purposes, it possessed none of the attributes thereof, but that any one, by paying a small fee for locker keys, and a preliminary order of liquor, could become a member, and that the steward would exchange bottles which

the members took from their lockers for bottles kept on ice, and that the members drank the liquor on the premises.

2. INSTRUCTIONS—*when correctly refused.* Refusal of an instruction which seeks to discredit testimony of detectives is correct.

3. DRAMSHOPS—*statute construed.* The act relating to anti-saloon territory, condemns the taking of orders in anti-saloon territory for the delivery of liquor, whether the one taking the order is. acting for the buyer or for the wholesale house.

4. DRAMSHOPS—*instructions.* On prosecution for sales of liquor in anti-saloon territory, instructions are correctly refused which seek to make the defendant's guilt or innocence turn, on whether in taking a certain order, he was the agent of the buyer or of a brewery, where there was sufficient evidence of sales to other persons to authorize a conviction which the instruction ignored.

5. CRIMINAL LAW—*instructions.* Refusal of a general instruction not applied to the evidence is not error.

6. CRIMINAL LAW—*instructions.* Refusal of an argumentative instruction which ignores partly the evidence tending to show guilt, is proper.

Prosecution for unlawful sale of intoxicating liquor. Error to the County Court of Knox county; the Hon. R. CLIFF RICE, Judge, presiding. Heard in this court at the April term, 1912. Affirmed. Opinion filed October 15, 1912.

FORREST F. COOKE, for plaintiff in error.

A. J. BOUTELLE, for defendant in error.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

On October 5, 1911, Henry Gardt was found guilty in the County Court of Knox county under the first count of an information which charged him with the unlawful sale of intoxicating liquor in anti-saloon terri⸗ tory, after having been theretofore convicted of the same offense. A motion for a new trial was denied and he was sentenced to confinement in the county jail for thirty days and to pay a fine of $200 and to stand committed till both fine and costs were paid. Defendant below has sued out this writ of error to review said judgment.

It was proved that plaintiff in error had previously been convicted of selling intoxicating liquor in anti-saloon territory in the city of Galesburg, and that the city of Galesburg, where the acts complained of took place, was still anti-saloon territory on July 6, 1911. It is, however, denied that plaintiff in error was engaged in the sale of intoxicating liquor on the date last named in the city of Galesburg, and it therefore becomes necessary to set out the evidence with some particularity.

On the sixth day of July, 1911, there was located on Prairie street, in the city of Galesburg, an organization known as the Heidelburg Club. The application to the Secretary of State for its incorporation stated its object to be the maintenance of club rooms for social purposes. Plaintiff in error was the treasurer of this club and was also one of the directors. The rooms of the club were on the ground floor of a building owned by the Pabst Brewing Company, which company also owned the fixtures in the club room. In the front part of this building was a cigar store, operated by plaintiff in error and his son, and partitioned off from the club rooms, but connected therewith by a doorway. This so-called club room, in the rear of the cigar store, contained a bar, tables, many numbered lockers and an ice box divided into many compartments and numbered to correspond with the numbers on the lockers. In the operation of the club it appears that any one might apply for membership and, by paying a small sum of money, become a duly constituted member. The money advanced by the new member was for a key to the door leading into the club room from the cigar store, for a key to a locker and for an initial order for whisky or beer, as the member desired. In ordering such liquor the member signed an order for the kind and amount he desired and ostensibly this order was sent by some one of the club managers or servants to a brewer or liquor dealer outside of the city of Galesburg and the order was

filled by express in a few days. When the liquor ordered by such member arrived at the club rooms it was placed in his locker. When the member desired to drink some of his liquor, he removed a bottle from his locker and took it to the bar where an employee of the club, termed a steward or a porter, exchanged such bottle for another bottle of the same kind that had been on ice. The warm bottle handed him by the member was then placed by the steward, or porter, in the ice box in the compartment bearing the same number as that on the member's locker. The next time the member presented a warm bottle of liquor at the bar, the cold bottle was taken out of his particular compartment in the ice box and exchanged with him.

On July 6, 1911, one Morgan, a detective in the employ of a society interested in the enforcement of the liquor laws of this state, called at the Heidelburg Club and inquired for the manager and was told by the plaintiff in error that he was the manager. Thereupon Morgan gave plaintiff in error $5.00, $2.00 of which was for keys as aforesaid and $3.00 for a case of beer, for which Morgan signed an order blank provided by plaintiff in error. Plaintiff in error took the money and the order and told Morgan that the beer would be ready for him the next time he came in. At that time plaintiff in error asked Morgan if he wanted a bottle of beer and Morgan was taken by Gardt into the club rooms and given a bottle of beer. Plaintiff in error told Morgan that the beer he used then would be taken out of the case ordered by him when it arrived. This occurred about half past one in the afternoon. About four o'clock the same day Morgan called again at the club room, received his locker key and found thirty-five bottles of beer in his locker, one having been deducted for that used by him earlier in the afternoon. At that time Morgan exchanged one of the bottles from his locker with a man behind the bar for a cold bottle and drank it on the premises. There is evi-

dence in the record of numerous transactions of this character, both by members of the club and by outsiders. Plaintiff in error contends that this club was a bona fide social organization and that the furnishing of liquor to the members was merely for the accommodation of the members and not the purpose of the organization. The court has made a careful study of the evidence in the record and is unable to agree with plaintiff in error in his contention.

The Heidelburg Club of Galesburg lacked many of the ordinary features of a social organization and in many aspects of its operation resembled closely a dramshop. Plaintiff in error testified that he was a trustee, or director, of the club and its treasurer, but there is no evidence in the record to show that the club had any other officers, by-laws, or rules. It does not seem to have been necessary for a person desiring to become a member to sign an application, pay an initiation fee, or be voted upon by the other members. The payment of dues at regular intervals does not seem to have been required of the members. There is no evidence in the record to show that this so-called "club" ever held any meetings as a club, either at regular or irregular intervals, or that any social gatherings were ever conducted under its auspices. In short, the sole purpose of this "club" seems to have been to enable any one to procure a drink of intoxicating liquor if he had the money to pay for it, without any regard to the character of the applicant. The evidence also fails to show any one engaged in running the "club" or in authority over it except Gardt. Plaintiff in error appears to have been the sole person in charge of this organization and but three employees are mentioned in the evidence. These men are termed "stewards" or "porters" but their duties partook so largely of the nature of those generally performed by bartenders that we can hardly doubt that the latter term would more fittingly describe them. In fact, counsel for plaintiff in error used the term "bartender" in con-

nection with one of said employees in his cross-examination of Avery, a detective working with Morgan. Plaintiff in error had formerly been a wholesale liquor dealer, and this building and the fixtures were owned by a brewery. Apparently any chance passer-by could become a member of this club, whether known to Gardt or not, by merely paying for certain keys and for a certain quantity of liquor in advance. Although Gardt claims that it was the duty of the steward to receive applications for membership and the cash for liquor and forward the money and the order therefor to the brewery, the evidence tends to show that Gardt himself took charge of such matters.

Section 11 of the act relating to anti-saloon territory forbids the sale of intoxicating liquor in any quantity whatever within anti-saloon territory. Section 12 provides penalties for anyone who "shall, by himself, or another, either as principal, clerk or servant, directly or indirectly, sell, barter or exchange any intoxicating liquor in any quantity whatever" within anti-saloon territory.

Section 13 is as follows:

"The giving away or delivery of any intoxicating liquor for the purpose of evading any provision of this act, or the taking of orders or the making of agreements at or within any political subdivision or district while the same is anti-saloon territory, for the sale or delivery of any intoxicating liquor, or other shift or device to evade any provision of this act, shall be held to be an unlawful selling."

These provisions are as comprehensive as language can well make them. We are of opinion that the proof warranted the jury in finding violations of the Dramshop Act and of the act relating to anti-saloon territory, both by the club and by all its officers, agents and servants, under Rickart v. People, 79 Ill. 85; People v. Law and Order Club, 203 Ill. 127; South Shore Country Club v. People, 228 Ill. 75, and People v. Craig, 155 Ill. App. 73.

The court refused twelve instructions requested by plaintiff in error. Several of these are embodied in instructions given at his request. The 5th sought to cast discredit upon the two detectives who testified for the People, and its refusal is justified by the principles stated in People v. Campbell, 234 Ill. 391. Nos. 10 and 11 sought to make the guilt or innocence of defendant turn upon the question whether in taking the order for Morgan he was the agent of the brewery or of Morgan. We are of opinion that the statute condemns the taking of orders in anti-saloon territory for the delivery of intoxicating liquor whether the person taking the order is acting for the buyer or for some wholesale house. But the evidence tended to show that defendant received all money taken in, and was responsible as the keeper of the place. Other evidence showed sales of bottles of beer for money then paid by persons who did not appear to be members, and whose beer was not taken from any locker, but from behind the bar. There was proof of sales to other persons besides Morgan sufficient to authorize a conviction under the first count. These instructions ignored all sales except to Morgan, and were for that reason properly refused. The 7th was a general proposition, not applied to the evidence, and it was therefore not error to refuse it. Atkinson v. Lester, 1 Scam. 407; Corbin v. Shearer, 8 Ill. (3 Gilm.) 482; Hessing v. McCloskey, 37 Ill. 341; Devlin v. People, 104 Ill. 504; Vallette v. Bilinski, 167 Ill. 564. The 8th was argumentative and ignored a part of the evidence tending to show guilt and was properly refused. The other refused instructions are not discussed by counsel. The judgment is affirmed.

*Affirmed.*